[No. 13177.   *En Banc.*   June 28, 1916.]

THE STATE OF WASHINGTON, *Respondent*, v.
WILLIAM H. KELLOGG, *Appellant*.[1]

SEDUCTION—UNCHASTITY—EVIDENCE—ADMISSIBILITY.   In a prosecution for seduction, a witness for the defense called to establish the unchastity of the prosecuting witness, who admitted that he had tried to have sexual intercourse with her, may be properly asked to state what he did.

WITNESSES—IMPEACHING OWN WITNESS—SURPRISE.   Where, in a prosecution for seduction of one of previous chaste character, the defense is surprised by the statement of its own witness that he had not had sexual intercourse with the prosecuting witness, the defense should be allowed to interrogate the witness as to former variant statements, and lay the foundation for impeachment by such statements.

MORRIS, C. J., and FULLERTON, J., dissent.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 12, 1915, upon a trial and conviction of seduction.   Reversed.

*William A. Greene* and *C. L. Henry* (*R. L. Blewett* and *Benj. S. Ohnick*, of counsel), for appellant.

*Alfred H. Lundin, Erven H. Palmer*, and *Joseph A. Barto*, for respondent.

HOLCOMB, J.—Appellant was prosecuted and convicted in the superior court of the crime of seduction.   It was charged that he did, on or about July 24, 1912, seduce and debauch one G. M., a female of previously chaste character.

[1]Reported in 158 Pac. 344.

Two errors are alleged, only one of which we believe entitled to consideration.

In his defense, appellant called a young man as a witness for the purpose of proving that G. M., the prosecuting witness, was not of chaste character previous to July 24, 1912, and for the further purpose of contradicting the testimony of the prosecuting witness that, previous to the date laid in the information, she had never had sexual intercourse with any man other than the appellant after his seductive arts and promises; and of her brother to the effect that he never saw any act of intercourse between the prosecuting witness and the witness in question during the months of July or August, 1912. Upon being placed on the witness stand and examined by appellant's counsel, the young man testified that, during the summer of 1912, until July 31, he lived in the vicinity of the residence of the prosecuting witness on Vashon island; that, at some time while there living, he had "attempted to have sexual intercourse with her." He was then asked to tell the jury what he did. To this an objection was sustained, the trial judge remarking, "If he did not succeed, then it is immaterial." After some colloquy, the jury were excused and the state's attorney was permitted to ask the witness, "Did you or did you not have sexual intercourse with G. M. prior to September 3, 1912?" to which he answered, "I did not." Counsel were informed that they would not be permitted to interrogate or cross-examine the witness further, as it would tend to degrade the young man, and because he was appellant's own witness, and that it was an attempt to impeach his own witness. Counsel for appellant offered to prove that the witness had made a statement to them tending to show that the act of the witness to which he referred was in fact such an act as comes within the legal definition of sexual intercourse, and that they were surprised by his testimony, and therefore entitled to cross-examine him as to his variant statements and to contradict him by proof of such statements. The offer was denied.

The rule is now well settled in a majority of jurisdictions that while a party producing a witness vouches for his character and general credibility, and may not, however greatly surprised by his testimony, impeach his character, nevertheless, when the party is surprised and prejudiced by the unexpected testimony in respect to material facts, the party calling him may interrogate him as to former variant statements (7 Ency. Evidence, 25, 27), and impeach in a proper case by proof of variant statements (Id., 28-31). And this court has said:

"The better rule undoubtedly is, that a party who has been surprised at the unfavorable testimony of a witness he has called in his own behalf, may ask such witness whether he has not made contradictory statements at other times and places, and if the witness denies it, show by other evidence that he has made such statements; . . ." *State Bank of Washington v. Spokane-Columbia River R. & Nav. Co.*, 53 Wash. 528, 102 Pac. 414.

In the first place, the witness having testified that, at the time in question, he had "attempted to have sexual intercourse with the girl," appellant had an undoubted right, under all the rules of evidence, to ask him what he did. That was only asking for the detailed facts. If, then, his testimony was surprising and unfavorable to appellant, and at variance with previous statements made by him in regard thereto, appellant has the right to show, *by him if possible*, such contradictory statements, which, however, the witness would have the right to explain. If he denied having made any such variant statements or having any recollection thereof, under the now well-settled rule appellant had the right, by preliminary questions, to "lay the proper foundation" for introducing contradictory evidence by interrogating him as to the time, place, and circumstances, and the substance of such contradictory statements. All of the testimony would then be for the jury to weigh.

In 2 Wigmore on Evidence, it is said:

"§ 896. . . . the rule has been long established, and is in its general validity never today questioned, that the party on whose behalf a witness appears cannot himself impeach that witness in certain ways." \

"§ 902. Prior Self-Contradiction. . . . Does, then, the principle of the rule forbidding the impeachment of one's own witness extend its prohibition to this sort of evidence? . . . An honest witness could readily explain how he came to make the former statement; a dishonest one would not be deterred from returning to truth by such a trifling obstacle. On correct principles, then, the use of self-contradictory statements is not forbidden."

"§ 903. . . . There ought to be no hesitation upon the propriety of this evidence. It is receivable on three distinct considerations: 1. The principle of the rule is directed against character evidence, and fails entirely to touch the present sort; 2. The dangers supposed to accompany its use are too speculative and trifling to merit consideration; 3. The exclusion of the evidence would be unjust (1) in depriving the party of the opportunity of exhibiting the truth and (2) in leaving him the prey of a hostile witness. The only real danger that is to be apprehended is that the contradictory statement may be taken by the jury as substantive testimony in the place of the statement on the stand; but this, though a violation of the Hearsay Rule (*post*, § 1018) is not a serious enough disadvantage to outweigh the above considerations, and can always be guarded against by proper instructions."

"§ 909. . . . The guarantee of credibility (if there is one at all) must relate to the witness' general personal trustworthiness of disposition and emotion, not to the correctness of specific statements of fact; since the latter, as is universally conceded (*ante*, § 907) may always be shown to be untrue."

"§ 1018. Since . . . it is 'the repugnancy of his evidence' that discredits him, obviously the Prior Self-Contradiction is not used *assertively; i. e.*, we are not asked to believe his prior statement as testimony, as we do not have to choose between the two. . . . In short, *the prior statement is not hearsay*, because it is not used assertively;

*i. e.,* not testimonially. . . . It follows, therefore, that the use of Prior Self-Contradictions to discredit is not obnoxious to the Hearsay Rule. It follows, conversely, that Prior Self-Contradictions, when admitted, are not to be treated as assertions having any *substantive or independent testimonial value;* they are to be employed merely as involving a repugnancy or inconsistency; otherwise they would in truth be obnoxious to the Hearsay Rule."

The previous chastity of the prosecuting witness was one of the important essentials of the case. It is true that another male witness testified to an act of intercourse with the prosecuting witness previous to her alleged seduction by appellant. The jury may, however, have utterly disbelieved this witness and may have believed, in whole or in part, the testimony of the witness whose rejected testimony is now under consideration, or the evidence of his former variant statements, as to either of which they should have been the sole judges. Upon an issue of chastity it is competent and material to prove previous acts of lewdness or unchastity. 7 Ency., Evidence, 51; *Davis v. State,* 36 Tex. Cr. 548, 38 S. W. 174.

Nor was the testimony of the witness referred to, so far as it went, *negative* testimony so as to preclude contradiction. It was positive evidence of a negative. Direct testimony that an event did not occur, or that a matter is not true, is *positive* and not *negative.* This witness was the actor himself. 9 Ency., Evidence, 865; *Frizell v. Cole,* 42 Ill. 362.

Where a witness swears that a particular act occurred at a specified time and place, or that particular language was spoken by a person to whom he refers, this is affirmative evidence. But, if another witness were at the same place at the same time, and were to swear that he did not observe the act or hear the language of which the other speaks, this would be called negative evidence. If, however, the latter witness were to state that his attention was fully attracted to what

occurred and what was said, and that the act of which the other spoke did not occur, or that the language was not used by the person to whom it was attributed, this would be fully as affirmative as the other. *Frizell v. Cole, supra.*

If the circumstances would tend to show an attempted act of sexual intercourse by the witness with the female, with her consent and any penetration, however slight, but interrupted or frustrated, it would tend to establish her previous unchastity, even though a completed act of intercourse was not had.

That was the purpose of the offered testimony, and it should have been admitted or the variant statements relating thereto. The exclusion thereof was prejudicial. We cannot tell how much weight or credibility it may have had with the jury. We are agreed that this exclusion of evidence by the court constituted prejudicial error and necessitates a reversal, although otherwise the evidence shown by the record was ample to warrant the conviction.

Judgment reversed, and cause remanded for new trial.

Mount and Bausman, JJ., concur.

Ellis, J. (concurring)—The witness should have been required to answer the question as to what he did. That question at least was not impeaching in its character. The answer might have had a tendency to show a consenting mind and disposition on the part of the prosecuting witness. The question was proper and called for an answer possibly material on the question whether the consent to improper relations with appellant was under a promise of marriage. Prior lewd conduct is always material in such a case. I concur in result.

Main and Chadwick, JJ. (concurring)—We concur in the result for the reasons stated by Judge Ellis.

Morris, C. J. (dissenting)—The majority opinion is based upon a misconception of the law as applied to the involved situation. I subscribe to the rule relied upon to sustain the

opinion: that a party who is surprised at the prejudicial testimony of his own witness may, after laying the proper foundation, impeach the witness. Such rule has no application here, however, because the witness sought to be impeached had given no testimony prejudicial to the appellant. The lack of prejudicial testimony has ingrafted an exception upon the rule permitting the impeachment of one's own witness by variant prior statements, which is as firmly established as the rule itself.

The purpose of impeaching testimony is to destroy the weight of adverse testimony. When there is no adverse testimony there is nothing to destroy. The witness had testified that he did not have sexual intercourse with the prosecuting witness. He also denied that the attempted intercourse consisted of acts which counsel for appellant incorporated into the questions, and which it was claimed the witness communicated to counsel. It is claimed this testimony was a surprise to the defendant, and an offer is made to prove variant prior statements. These variant statements, if admitted, would not establish the fact that the witness did have such intercourse, nor could it properly be considered by the jury for that purpose. If the jury believed these contradictory prior statements had been made, it would not establish the fact of the previous intercourse. The only purpose served by the impeaching testimony would be to enable the defendant to get the naked declaration of the witness before the jury. Viewed in every light, this would be pure hearsay. Its character as such cannot be disguised by calling it an impeachment. *People v. Wallace*, 89 Cal. 158, 26 Pac. 650.

The majority opinion is in direct conflict with *State v. Simmons*, 52 Wash. 132, 100 Pac. 269, and *State v. Catsampas*, 62 Wash. 70, 112 Pac. 1116. In the first of these cases it is said, in ruling upon this particular point:

"Had the witness testified to some affirmative fact prejudicial to the appellant, the ruling complained of would perhaps be erroneous. . . . But the witness testified to a

mere negative, and had he been ever so successfully impeached the only effect would be to destroy testimony which was in itself worthless."

In the second case it is said:

"The object of the testimony not being to affect the credibility of a witness concerning any affirmative statement by him, which would be prejudicial to the state's interest, the only effect it could have would be to get before the jury the alleged statement of a discredited witness."

That such is the established rule is supported by the weight of authority. 40 Cyc. 2696; *Culpepper v. State,* 4 Okl. Cr. 103, 111 Pac. 679, 140 Am. St. 668; *Langford v. Jones,* 18 Ore. 307, 22 Pac. 1064; *People v. Jacobs,* 49 Cal. 384; *Mercer v. State,* 41 Fla. 279, 26 South. 317; *Hull v. State ex rel. Dickey,* 93 Ind. 128; *Champ v. Commonwealth,* 2 Metc. 17, 74 Am. Dec. 388; *Saylor v. Commonwealth,* 17 Ky. Law 959, 33 S. W. 185; *State v. Reed,* 60 Me. 550; *People v. Mitchell,* 94 Cal. 550, 29 Pac. 1106; *In re Kennedy's Estate,* 104 Cal. 429, 38 Pac. 93.

In citing Wigmore on Evidence and Ency. of Evidence, the majority opinion cites only the rule, but fails to observe the exception based upon the negative and nonprejudicial character of the testimony sought to be impeached. The exception is noted in both texts. 2 Wigmore, Evidence, § 904, subd. 8, and § 1043; Ency. of Evidence, 31. *State Bank of Washington v. Spokane-Columbia River R. & Nav. Co.,* 53 Wash. 528, 102 Pac. 414, also cited, is not applicable for it refers to a situation where it was permitted to impeach affirmative or prejudicial matter.

For these reasons, the ruling complained of was correct and should be affirmed. I therefore dissent.

FULLERTON, J., concurs with Morris, C. J.