[No. 27565. Department Two. November 14, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v. LESTER EDWARD THOMAS, *Appellant*.[1]

[1]Reported in 95 P. (2d) 1036.

Charles T. Wright, for appellant.

R. I. Studebaker, for respondent.

GERAGHTY, J.—The appellant was found guilty by the verdict of a jury of the crime of carnal knowledge of a female child of the age of thirteen years and not his wife. After the denial of a motion for an order of dismissal notwithstanding the verdict or, in the alternative, for a new trial, judgment was entered upon the verdict, and the appellant was sentenced to life imprisonment in the state penitentiary.

The first error assigned by the appellant is the court's refusal to dismiss the action for want of timely prosecution.

Section 2312 of Remington's Revised Statutes [P. C. § 9143] provides:

"If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown."

The information was filed October 14, 1938, and the case was called for trial February 9, 1939. The transcript contains a motion for dismissal, but neither the transcript nor statement of facts shows what disposition was made of the motion. It is to be assumed, of course, that it was denied, because the case proceeded to trial. In the state of the record, it will be presumed that the motion was denied on good cause shown, as provided in the statute.

Aside from this, we have repeatedly followed the rule stated in *State v. Alexander*, 65 Wash. 488, 118 Pac. 645:

"After the trial has begun, or when it is about to take place, it is too late for the defendant to move for a dismissal. The statute provides a remedy for the defendant when the prosecutor without cause does not bring the case to trial. It was not intended as a means to escape or a method of delay when the trial is at hand. · If the motion had been made prior to the time of trial, the court, for good cause shown, would refuse a dismissal. When the trial is at hand, the defendant will be held to have waived his right under the statute."

As was said in *State v. Seright*, 48 Wash. 307, 93 Pac. 521, if a plaintiff could exercise his right to a dismissal just before the trial, so he might during the trial or after a verdict finding him guilty, thus giving the statute an effect directly opposite to the legislative intent and making it a means of delaying the final disposition of the case, when the intention was to hasten that event.

At the close of the state's case, the appellant moved for a nonsuit or, in the alternative, for a directed verdict of not guilty. His motion was denied, and the appellant rested. The denial of this motion is assigned as error.

The evidence produced by the state shows the following facts:

The child against whom appellant is alleged to have committed the crime with which he is charged was, at the time, thirteen years of age and living with her mother, Mrs. McCormick, at Shelton. Her continued absence from the public school she had been attending attracted the attention of Dolores Bader, the school nurse. A call at the child's home gave rise to some question in Miss Bader's mind, causing her to make a later visit accompanied by Mr. Loop, the school superintendent.

On arriving at the home, they found the appellant and Mrs. McCormick there. To Miss Bader's inquiry why the child was not at school, the mother replied that she was not feeling well and was then in bed.

Mr. Loop testified that, in the course of the conversation, Mrs. McCormick said her daughter was in the family way, and he asked her ". . . if she knew the party that caused it." She answered, " 'Yes, her husband.' " In answer to his inquiry where the husband was, the mother pointed to the appellant, who was sitting at a table in the room.

"Then I directed my question to him. I asked him if he was the cause of the girl's being in a family way, and he said, 'Yes.' 'Have you your wedding papers?' He looked up at Mrs. McCormick and said, 'Ma, have I them?' She said, 'Yes, you have somewhere.' 'Well, I would advise you to find them.' Q. Who said that? A. I did. . . . Q. Did he attempt to find the papers, Mr. Loop? A. No, I didn't see him move

from the table. Q. Did Mrs. McCormick attempt to find them? A. No."

Two physicians of admitted qualification, who had examined the child, testified that their examination disclosed that her hymen had been ruptured, a condition indicating sexual intercourse as its most probable cause.

There was introduced in evidence, over the appellant's objection, a sworn confession made by him after his arrest, in which he admitted having had sexual intercourse with the child, and stated that she had told him that she was pregnant; that he went to the office of the prosecuting attorney in Olympia to inquire about a license to marry her; that he tried to marry, but could not, owing to the refusal of the authorities to issue a license, and concluded by reiterating that he was not married to her. The confession was sworn to before a notary and attested by witnesses who appeared for the state at the trial.

On this record, it cannot be doubted that the state made a *prima facie* case for the jury.

█ It is next contended by the appellant that the court erred by admitting in evidence the confession of the appellant without first proving the *corpus delicti.*

We are of the opinion that, independently of the confession, the evidence was sufficient to warrant the finding of an overt act. But the well settled rule is that the confession of a defendant, along with other circumstances in the case, may be shown to establish the *corpus delicti. State v. Marselle,* 43 Wash. 273, 86 Pac. 586; *State v. Scott,* 86 Wash. 296, 150 Pac. 423, L. R. A. 1916B, 844; *State v. Gray,* 98 Wash. 279, 167 Pac. 951; *State v. Spillman,* 110 Wash. 662, 188 Pac. 915; *State v. Wynn,* 125 Wash. 398, 216 Pac. 872; *State v. Bestolas,* 155 Wash. 212, 283 Pac. 687.

When the *corpus delicti* is ultimately shown by the

evidence, any error in the order of proof by the admission of a confession in advance of other proof of the *corpus delicti* is cured. *State v. Marselle, supra.*

■ The next error assigned is the admission in evidence of an extrajudicial statement made by the child.

Testifying as a witness for the state, she denied having had any sexual intercourse with the appellant. The prosecuting attorney, taken by surprise, then submitted to the witness a written statement purporting to have been signed by her, in which she detailed how the appellant had, on one occasion, carnally known her, and inquired if she had signed it. She admitted signing the statement; whereupon, over appellant's objection, it was admitted in evidence for the purpose of impeaching her credibility.

In *State v. Fry,* 169 Wash. 313, 13 P. (2d) 491, Fry and a codefendant, McGillis, were accused of the crime of sodomy. McGillis plead guilty and, at the trial of Fry, was called as a witness for the state, and was asked whether the defendant had committed the act which the state was attempting to prove. He answered in the negative. The prosecuting attorney then asked the witness whether he had not made a written statement to the contrary. This he denied. The affidavit was then produced and admitted in evidence. On appeal, the admission of the affidavit was assigned as error. After stating the rule to the effect that, when a party calling a witness is taken by surprise by reason of affirmative testimony prejudicial to the interests of the party calling the witness, his prior contradictory statement may be shown for the purpose of affecting his credibility, the court continues:

"There are two reasons, we think, why the affidavit was competent: (1) Although a portion of the statement of the witness while on the stand was in form in the negative, it was, in effect, in the affirmative. It

was testimony that the act did not occur. As such, it was adverse and prejudicial to the state's interest. The affidavit made by McGillis, if admitted, would affect his credibility on a matter that was vital to the case. His unexpected negation having the effect of affirmative testimony favorable to the defendant, the state was entitled to depreciate or destroy the weight of it by prior contradictory statements. The situation was not an illustration of a mere failure to give beneficial testimony, but rather one of giving adverse and prejudicial testimony."

See, also, *State v. Kellogg,* 91 Wash. 665, 158 Pac. 344.

Appellant's final assignment of error is based upon the reception of the testimony of one of the physicians, Dr. Kennedy, who testified in respect to the child's physical condition. No objection was urged by the appellant to the reception of the testimony of the second physician, Dr. Linkletter, which was substantially the same as that given by Dr. Kennedy.

It appears that the ordinary relation of physician and patient did not exist between Dr. Kennedy and the child. Dr. Kennedy held the position of physician for the county welfare department and examined the child at the request of that department. Neither the child nor her mother, both present in court, objected to the reception of Dr. Kennedy's testimony, or otherwise claimed privilege.

In *State v. Winnett,* 48 Wash. 93, 92 Pac. 904, the defendant was charged with rape. A physician, who had examined the prosecuting witness, testified to the result of the examination made by him, whereby he ascertained, and so testified, that the prosecuting witness was in the family way. Disposing of the appellant's contention, the court said:

"There is nothing here tending to show that the relation of physician and patient existed between them,

or that any confidential relation whatever existed. The record does not indicate, but presumably the examination was made at the instance of the state, and was made for the purpose of publishing the result of the examination. No confidential relation appears to be violated. The case does not come within the spirit or reason of the law which prohibits physicians from giving information acquired in attending a patient, and no error was committed in admitting the testimony objected to."

The judgment is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 95 P. (2d) 1031.