[No. 28662. Department One. August 1, 1942.]

THE STATE OF WASHINGTON, *Respondent,* v. REX WINCHELL, *Appellant.*[1]

[1]Reported in 128 P. (2d) 643.

*Clinton & Southard,* for appellant.

*Lowell B. Vail,* for respondent.

DRIVER, J.—This is an appeal by the defendant from a judgment and sentence entered on a jury's verdict finding him guilty of the crime of unlawful possession of intoxicating liquor, other than beer and wine, with intent to sell the same, in violation of Rem. Rev. Stat. (Sup.), § 7306-92a [P. C. § 3180-102a], which provides that

"Any person who shall keep or possess liquor on premises conducted or maintained by him as principal or agent with the intent to sell the same contrary to provisions of this act, shall be guilty of a gross misdemeanor."

■ Appellant first asserts that the lower court erred in denying his motion to dismiss the action in accordance with the provisions of Rem. Rev. Stat., § 2312 [P. C. § 9143], that

"If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown."

The information was filed September 15, 1941, and the motion and affidavit to dismiss on December 1, 1941. The prosecuting attorney, in opposition to the motion, interposed a counter affidavit, which, in part, recited:

"That it has not been practical since June of 1941 to call a jury term in Grant County because of the few number of cases to be tried compared with the expense of calling a jury term. That a jury term will

be called for January, 1942, at which time the above entitled matter will be tried. That the defendant has been out on bail since a short time after his arrest in the above cause and has not been inconvenienced and will not be inconvenienced so far as this affiant knows, by a delay in having the trial."

The order denying the motion was entered December 9th, and the case went to trial on January 19, 1942.

*State v. Vukich,* 158 Wash. 362, 290 Pac. 992, directly in point, is determinative of the question under consideration. There, appellants assigned as error the refusal of the superior court to dismiss a criminal proceeding against them after sixty days had elapsed from the date of the filing of the information. No jury had been on duty in connection with the court before which the prosecution was pending during that time, and this court held that, the lower court having concluded that good cause for the delay had been shown, its denial of appellants' motion to dismiss was not erroneous.

By his assignments of error, appellant also maintains that the evidence was not sufficient to support the verdict. The following is a summary of the material record evidence adduced by the state bearing on that question:

About one o'clock on the morning of September 14, 1941, the sheriff of Grant county and a number of other law enforcement officers raided a place known as the Spar Rooms in Grand Coulee. A short time before that, Mr. Sells, the town marshal of Soap Lake, had gone there. He had tried to enter by the front door, but found it locked. He then went around to the back door in the alleyway and found it locked also, but, when he knocked, a woman named Gertrude

Hill appeared and let him in. He described the room which he entered as follows:

"Well, it is an upstairs room. I believe there is sort of a hill there. I believe you almost walk in from the ground level in the alley. Coming from the street you have to go up a flight of stairs. The room is not quite as long as this courtroom is wide; it is narrower, of course. They had sort of benches all the way around; they had a few tables or at least one table. I know there were a few people sitting at it drinking, and chairs next to it. Towards one corner they have this lattice work. That is where they mixed the drinks and served them from."

Mr. Sells purchased two drinks of straight whiskey, which were served in whiskey glasses by Miss Hill. Immediately after he had purchased the first drink, appellant came in the front door and went behind the lattice work where the drinks were mixed. Appellant was in the place about ten minutes. Mr. Sells further testified:

"Q. Where was he during that time? A. Behind the bar most of the time. Q. What was he doing? A. Rinsing glasses out and looking the stock over—the liquor they had there, and talking to these people at the table."

He also stated that some of the people in the place were making a bet as to "whether a fellow named Poe was an American author or not"; that they talked of wagering a quart of whiskey; and that "They turned to Rex [appellant] and asked him if he could furnish the quart of whiskey and Rex said he could." As Mr. Sells went to the back door to let in the rest of the officers, the appellant went out the front door.

Back of the bar, the officers found a considerable quantity of intoxicating liquor—four full pint bottles and three partly full quart bottles of different kinds and brands of whiskey, two quart bottles of gin,

partly full, and lemon juice, mixers, and glasses. After fifteen minutes or so, the officers took all these, arrested Miss Hill, turned out the lights, locked up the place, and left. They returned in about twenty minutes and found the lights turned on in the barroom. When one of them knocked on the back door, appellant, who was alone in the room, admitted him, and the two of them then went to the front door and opened it for the sheriff. The latter testified that he at that time had the following conversation with the appellant:

"When I walked in he says, 'There has been some mistake, hasn't there, Gordon?' I says, 'Well, I don't believe there has.' He says, 'Aren't you a little bit out of line?' I said, 'Why?' He said, 'Taking the place here.' I said, 'Well, we made a buy here tonight and that is the reason we are taking it.'"

The sheriff then informed appellant that Miss Hill had been arrested in connection with the "buy," and appellant remarked: "She is not supposed to be selling that here; she knew better than to make a sale."

The marshal of Grand Coulee testified that, on different occasions shortly before the raid, he had seen appellant enter by both the front and the back of the place, using keys to unlock the doors; and that, for some time, appellant had been living in a little two-room cabin about fifteen feet back of the Spar, between it and the alley.

There was clear and direct evidence tending to prove that, on the date charged in the information, intoxicating liquor, other than beer and wine, was kept in the Spar Rooms with the intent to sell the same unlawfully. The question under consideration may be narrowed, then, to this: Was there substantial evidence to support a finding by the jury that appellant

participated as principal or accomplice in the commission of the offense?

The evidence outlined above, while wholly circumstantial, was, we think, sufficient to support such a finding. It was such as to negative every reasonable hypothesis other than that appellant did so participate. He and his witnesses offered testimony to explain his conduct, it is true. They testified, in effect, that Miss Hill was the sole tenant of the Spar Rooms and that she was in exclusive possession thereof; that she had given him the keys to the place in order that he might have access to the toilet and bath, there being no such facilities in his cabin; that he rented the cabin directly from the owner of the Spar; and that he had no interest in the Spar and was not an agent or employee of Miss Hill, although she admitted, on cross-examination, that she "had him managing the place for me up until about the last of February [1941]." However, all the evidence adduced by appellant to explain and to contradict the circumstances disclosed by the testimony of the state's witnesses merely raised an issue of fact, which it was the jury's province to resolve.

We find no error in the record, and the judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.