[No. 31618. Department One. May 24, 1951.]

THE STATE OF WASHINGTON, *Respondent*, v. THEODORE S. THOMPSON, *Appellant*.[1]

[1]Reported in 232 P. (2d) 87.

*Theodore S. Thompson, pro se.*

*Charles O. Carroll* and *T. P. Ulvestad,* for respondent.

FINLEY, J.—Theodore S. Thompson, hereinafter referred to as appellant, was convicted of second degree burglary. He has appealed from the judgment and sentence entered on the verdict.

The appellant assigns the giving of the court's instruction No. 5 as error. That instruction is quoted as follows:

"The word 'break' as defined by the laws of the State of Washington, when used in connection with the crime of burglary, means and includes the entering of a building, room or apartment, by or through any opening of any kind."

The decisive question in this appeal is whether the concept of "a breaking" or the "use of some force" is a necessary element in proving the commission of the crime of burglary. Stated with a moderately different twist, the question is: Does the entering of a building, room or apartment by or through *any opening* of *any kind* constitute a constructive or legally cognizable fictional *breaking* under our statutory definition of the word "break" as an element of the crime of burglary in this state?

In this opinion the rule is established that the proof of a mere entering of a building, room or apartment, by or through *any opening* of *any kind* would not constitute proof of a breaking, as that essential element of the crime of burglary is defined in our statutes. It follows that the giving of the court's instruction No. 5 constituted prejudicial error. The basis for this decision is discussed in some detail as follows:

The crime of second degree burglary is set forth in Rem. Rev. Stat., § 2579 [P.P.C. § 113-77], as follows:

"Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling-house of another

or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years."

Rem. Rev. Stat., § 2303 [P.P.C. § 112-93], as it applies to the crime of burglary, reads in part as follows:

"(20) The word 'break' when used in connection with the crime of burglary, shall include:

"(a) Breaking or violently detaching any part, internal or external, of a building;

"(b) Opening, for the purpose of entering therein, any outer door of a building or of any room, apartment or set of apartments therein separately used and occupied, or any window, shutter, scuttle or other thing used for covering any opening thereto or therein, or which gives passage from one part thereof to another;

"(c) Obtaining entrance into such building or apartment by any threat or artifice, used for that purpose, or by collusion with any person therein;

"(d) Entering such building, room or apartment by or through any pipe, chimney or other opening, or by excavating or digging through or under a building or the walls or foundation thereof."

Perhaps, as generally understood, and certainly on the basis of its legal history, the term *burglary* suggests the concept of *a breaking,* or *some use of force,* as an essential element in the proof of the commission of the crime of burglary. Furthermore, it is apparent from a casual reading of the provisions of Rem. Rev. Stat., § 2303, that the term "break" or "breaking," as a statutory concept, *normally connotes* the use of some force in effecting an entry. In *State v. Rosencrans,* 24 Wn. (2d) 775, 779, 167 P. (2d) 170, the following language is found:

". . . The gist of burglarious breaking is the application of force to remove some obstacle to entry, and the amount of force employed is not material. The exercise of the slightest force is sufficient. The breaking consists of the removal by the intruder, by the exercise of force, of an obstruction which, if left untouched, would prevent entrance. Hence, the application of force to push further

open an already partly open door or window to enable a person to enter a room or building, is a breaking sufficient to constitute burglary if the other essential elements of the offense are present."

However, subparagraph (20) (d) of Rem. Rev. Stat., § 2303, eliminates the use of force as an element in the crime of burglary, where the entry is accomplished "by or through any pipe, chimney or other opening." The general terminology *or other opening* follows the precise terms, (1) pipe, and (2) chimney.

■ The *ejusdem generis* principle of statutory interpretation is well known and citation of available and extensive authority is not indicated. The principle requires that general terms appearing in a statute in connection with precise, specific terms, shall be accorded meaning and effect only to the extent that the general terms suggest items or things similar to those designated by the precise or specific terms. In other words, the precise terms modify, influence or restrict the interpretation or application of the general terms where both are used in sequence or collocation in legislative enactments. The *ejusdem generis* principle may not apply automatically in every problem of statutory interpretation where precise, specific words are followed by general words. 50 Am. Jur. 246, § 250.

To justify or to provide statutory sanction for the court's instruction No. 5, it would be necessary to disregard or withhold application of *ejusdem generis* respecting Rem. Rev. Stat., § 2303 (20) (d). That would accord broad, all-inclusive meaning to the phrase, "*or other opening.*" Thus, an entry through a wide open door, absent any breaking or even the slightest exertion of force, except the minimum necessary for an alleged offender to propel himself against or through the atmosphere, might constitute burglary. The result would be the same whether based on the notion that a constructive or fictional breaking had occurred or on the more realistic thought, that *a breaking,* or *use of force,* had by statute become a nonessential element respecting the crime of burglary. Actually, in Rem. Rev. Stat., § 2303 (20) (d), the legislature appears to have intended to elimi-

nate the *element of force* or *breaking* respecting the crime of burglary in some situations, but only in those where entry was accomplished through a pipe or a chimney or a *similar* opening which might provide easy ingress or egress without the necessity for any application of force to achieve entry. In other words, the thinking may very well have been that a person achieving entry cleverly and easily by or through a pipe, chimney or other *similar* opening, without force or breaking (the other elements of the crime being present), should not escape the consequence of his acts and possible conviction of burglary merely because of the absence of the element of force in achieving the entry.

Carrying the thought one step further: the legislative draftsman appears to have been thinking of openings, normally not closed or fastened shut; that is, openings similar to chimneys or pipes. Hence, the use of the general terminology following the more precise in Rem. Rev. Stat., § 2303 (20) (d). But recognizing that it was intended to make certain exceptions to the familiar requirement regarding *a breaking* or *use of some force,* is not to say that the legislature intended to abandon entirely the concept "of a breaking" or the "use of force" as an essential element in the proof of the commission of the crime of burglary. Contrary to the legislative intent as we comprehend it relative to Rem. Rev. Stat., § 2303 (20) (d), the court's instruction No. 5, quoted above, eliminates entirely the concept of "a breaking" or "use of force." A jury, analyzing the state's evidence under instruction No. 5, and believing an entry had been made "by or through" any opening of any kind, other than a chimney or pipe (possibly an open doorway), but not convinced beyond a reasonable doubt that there had been a "breaking" (use of some force—the *Rosencrans* case, *supra*), nevertheless could find a defendant guilty of the crime of burglary. In our opinion, such a result would be without statutory authority.

One further thought occurs. In Rem. Rev. Stat., § 2303 (20), the legislature, at some length and in some detail, has modified the apparently usual and historical legal meaning

of the term *break,* where, as provided therein, (a) *any part* of a building is broken or detached; (b) any window, shutter, scuttle or other thing is opened; (c) entrance is attained by threat, artifice or collusion; (d) entrance is achieved through a pipe, chimney or other opening, or by excavating or digging under a building, walls or foundation.

Thus, reasonably definite legislative expression has been indicated respecting a number of situations that might be expected to arise. This brings to mind a second principle of statutory interpretation—that the expression of one thing excludes others not expressed; *expressio unius est exclusio alterius. State ex rel. Port of Seattle v. Department of Public Service,* 1 Wn. (2d) 102, 95 P. (2d) 1007; 50 Am. Jur. 238, § 244. This latter principle is further justification for strict interpretation and application of *ejusdem generis.*

Finally, if any additional acceptable legal doctrine be necessary to buttress the result towards which this discussion points, it may be emphasized that penal statutes generally are construed strictly against the state and in favor of an accused. *State v. Hemrich,* 93 Wash. 439, 161 Pac. 79.

In view of the foregoing, our conclusion is apparent that the legislature did not intend the complete elimination of the concept of "a breaking" which was possible under the court's instruction No. 5. That instruction obviously went beyond the sanction of the existing statutes and constituted error. Appellant presented no evidence. His confession, admitted in evidence as state Exhibit 7, supported his contention that he achieved entry through "the rear alley door which was not closed." The state's evidence, otherwise, consistently indicated a use of force or a breaking. If all of the evidence had been consistent with the theory of a use of force or a breaking, instruction No. 5 might not have constituted prejudicial error. But considering the above conflict in the state of the evidence, the giving of instruction No. 5 was prejudicial error.

The above disposes of this appeal. However, appellant has assigned further errors and it seems desirable to comment on two of the questions raised by appellant's assignments.

It is contended that appellant was not tried within sixty days after the information was filed and that the case against him should have been dismissed on the basis of Rem. Rev. Stat., § 2312 [P.P.C. § 120-15]. That statute reads as follows:

"If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed unless good cause to the contrary is shown."

The constitution of the state of Washington, amendment 10, gives to persons charged with crime the right "to have a speedy, public trial." This constitutional provision, in effect, has been implemented by legislative enactment of Rem. Rev. Stat., § 2312. The constitutional provision has been referred to a number of times in decisions of this court and there are numerous decisions interpreting Rem. Rev. Stat.; § 2312. A partial list of the decisions is as follows:

State v. Brodie, 7 Wash. 442, 35 Pac. 137; State v. Lewis, 35 Wash. 261, 77 Pac. 198; State v. Seright, 48 Wash. 307, 93 Pac. 521; State v. Parmeter, 49 Wash. 435, 95 Pac. 1012; State v. Alexander, 65 Wash. 488, 118 Pac. 645; State v. Miller, 72 Wash. 154, 129 Pac. 1100; State v. Jones, 80 Wash. 335, 141 Pac. 700; State v. Nilnch, 131 Wash. 344, 230 Pac. 129; State v. Estes, 151 Wash. 51, 274 Pac. 1053; State v. Vukich, 158 Wash. 362, 290 Pac. 992; State v. Wingard, 160 Wash. 132, 295 Pac. 116; State v. Lester, 161 Wash. 227, 296 Pac. 549; State v. Thomas, 1 Wn. (2d) 298, 95 P. (2d) 1036; State v. Domanski, 5 Wn. (2d) 686, 106 P. (2d) 591; State v. Winchell, 14 Wn. (2d) 420, 128 P. (2d) 643; State v. Jenkins, 19 Wn. (2d) 181, 142 P. (2d) 263; State ex rel. James v. Superior Court, 32 Wn. (2d) 451, 202 P. (2d) 250.

In the ably researched and well written opinion by Ellis, J., in State v. Miller, 72 Wash. 154, 129 Pac. 1100, a dis-

tinction is made betwixt a criminal defendant's interests based upon amendment 10 of the state constitution and those based upon Rem. Rev. Stat., § 2312. In part, at page 161, the opinion reads:

"There is another distinction between the mandate of the statute and the provision of the constitution. The one is a statutory mandate, the other a constitutional privilege. The statute imposes upon the state the duty to bring the accused to trial within the sixty days. The state must take the initial action."

Elaborating further on the above distinction between constitutional and statutory rights, the thought seems to have been that an accused may waive his *constitutional* rights to a speedy trial by inaction until the time of trial. But with reference to his *statutory* rights, an accused might wait until the time of trial without necessarily waiving those rights. In other words, an accused, even very belatedly, may urge seriously that the statute mandatorily required dismissal by the court unless good cause is shown to the contrary. The latter thought suggests a duty on the part of the court to find, or a duty or a burden on the part of the prosecution to show, positively and affirmatively, good cause justifying delay of the trial for more than sixty days. Absent the finding by the court or the showing by the prosecution, dismissal might be mandatory under the statute. Subsequent decisions of the court seem to have lost sight of this subtle distinction observed by Judge Ellis. In *State v. Estes*, 151 Wash. 51, 274 Pac. 1053, at page 54, a pertinent observation regarding Rem. Rev. Stat., § 2312, reads as follows:

" . . . What is a speedy trial, must, of necessity, depend upon the facts and circumstances of the particular case, and something must be left to the discretion of the trial court in such a matter. . . ."

The thought in the last quotation is basic and seems to be the concept implicit throughout the numerous decisions interpreting Rem. Rev. Stat., § 2312. It seems to link together in a somewhat orderly pattern decisions that otherwise might appear to be inconsistent.

It is pointed out cogently in *State v. Seright*, 48 Wash. 307, 93 Pac. 521, at page 309, and in *State v. Miller*, 72 Wash. 154, 129 Pac. 1100, at page 163, that the purpose of the statute was to provide a speedy trial; that it was never intended to provide the means for escaping trial altogether. It is suggested in these and later cases that to allow an accused to rely on the statute and belatedly to secure a dismissal of the case against him, when his trial is actually at hand, would be entirely inconsistent with the purpose of the statute and more in line with a purpose of assisting a defendant to escape trial altogether.

In the instant case, defense counsel to represent appellant was appointed by the court shortly after the information was filed. Thereafter, the appellant was released on bail for a number of weeks. Subsequently, appellant refused to be represented by counsel appointed by the court. On at least three occasions, appointment of other defense counsel was suggested and offered to appellant by the court. He refused the offers of counsel, stating that he preferred to represent himself. On September 27, 1950, appellant requested dismissal of the case against him, based upon Rem. Rev. Stat., § 2312. At that same time (the trial having been set for the following October 2nd), appellant requested a continuance in order that he could have further opportunity to prepare his defense. A similar request for continuance was made again on October 2nd, the actual date when appellant's trial occurred.

 It would seem that appellant is not entitled to blow both hot and cold—to seek dismissal based upon delay in trial, on the one hand; while at the same time, requesting and insisting upon further continuance or postponement of the trial. His assignment of error, based upon the delay of more than sixty days in affording him an opportunity for trial, was without merit. The statement of facts reveals that little or no showing of good cause or excuse for the delay was offered by the state. The deputy prosecutor did suggest that appellant had been arraigned within sixty days after he was charged by information. That was not

adequate as a showing of good cause for the delay; nevertheless, the court was justified in concluding and ruling that the case should not be dismissed on the basis of Rem. Rev. Stat., § 2312.

Now as to the assignment of error based upon admission into evidence of a written statement or confession signed by appellant. The law enforcement officers apparently attempted to follow what is undoubtedly the better practice of warning appellant that a signed statement or confession might be used against him. Apparently they went one step further and incorporated language to that effect in a written statement they had prepared and hoped to persuade appellant to execute. Curiously enough, appellant seems to have objected to the incorporated language which intimated that the statement might be used in a prosecution against him. As a result of his unhappiness and on his insistence, this annoying language was deleted, and appellant thereupon signed the written statement. It is his contention that the law enforcement officers secured his signature to the statement by deception; that they promised faithfully that the statement was only for the records of the police department; that it would be used only in that connection, and most certainly not in any prosecution directed against, of all people, the appellant.

Obtaining confessions or written signed statements is a delicate and difficult matter. It is delicate, in that the rights of the person who may subsequently be accused of crime must at all times be observed. It is difficult, in that some embarrassment or reticence is to be expected on the part of alleged offenders in accommodating law enforcement officers engaged in the performance of their duties by furnishing them with signed confessions or statements. Perhaps in this respect, again it can be said that a policeman's lot is not a happy one.

Keeping in mind the caution that should prevail respecting confessions or signed statements, the general rule, supported by the weight of authority, appears to be that the use of artifice—even trickery or fraud—in inducing a confession, will not alone render the confession inad-

missible as evidence. But in this connection it may be worth noting that in admitting such testimony into evidence, the courts have often condemned the practice of obtaining confessions in this manner. 20 Am. Jur. 444, § 519.

Otto Kolar, the owner of Kolar's Auto Rebuild, testified that a number of items of personal property (which he identified by serial number) were stolen from his shop on March 20, 1950; that appellant had at one time been employed in his shop and was familiar with the entrances and exits. Pictures taken by Otto Kolar the day after the alleged burglary and his testimony easily supported an inference that doors to the shop had been broken and entry effected by use of force. Otto Kolar further testified that the back doors of his shop were ajar the morning after the alleged burglary; that normally those doors were either bolted or nailed shut.

When arresting officers called upon appellant at his home they found tools and equipment in the back seat of his automobile and in his bedroom, identified as stolen from Kolar's Auto Rebuild. A Mr. Sawyer identified appellant and testified that appellant sold him a paint spray gun; that he gave a check to appellant in payment for the spray gun; that at the time of payment, he marked the serial number of the spray gun on the face of the check. The cancelled check in question was introduced into evidence. The spray gun was identified as one stolen from Kolar's Auto Rebuild.

■ There is little need to go further in outlining the evidence introduced by the state in support of the charge of burglary in the second degree against appellant. The evidence already referred to was adequate to support a verdict of guilty without considering the signed confession, and despite any error that might be attributable by the appellant to the admission of the confession into evidence. In other words, it is difficult to see how the introduction of the confession could have prejudiced the appellant in view of the otherwise formidable array of evidence against him.

Either on the basis of an alleged correspondence law course or by reason of native intelligence, appellant, repre-

senting himself, considered the matter of sufficient importance, was able to find the time, and has prepared a very creditable appeal brief. We have not been favored with a brief on the part of the state. No inconsiderable research, time and effort therefore has been necessary in the preparation of this opinion. The public interest seems to require that some serious and exhaustive legal research be done—somewhere, sometime—in connection with appeals in criminal cases.

As pointed out above, the giving of the court's instruction No. 5 constituted prejudicial error, and the conviction, judgment and sentence are set aside and a new trial is granted on this ground alone.

BEALS and HILL, JJ., concur.

SCHWELLENBACH, C. J. (concurring in the result)—I concur in the result on the ground that the giving of instruction No. 5 constituted prejudicial error.

The court correctly defined "burglary in the second degree," when it said in instruction No. 3, "Every person who, with intent to commit some crime therein, shall break and enter any building or premises, or part thereof, wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree."

The court correctly defined the word "enter" in instruction No. 4, which reads as follows: "The word 'enter' as defined by the laws of the state of Washington, when used in connection with the crime of burglary, means and includes the entrance of the offender, or the insertion of any part of his body."

To constitute the crime of burglary, the accused must not only *enter* a building wherein any property is kept for use, sale or deposit, but he must *break* and *enter*.

Rem. Rev. Stat., § 2303 (20) [P.P.C. § 112-93], defines the word "break," when used in connection with the crime of burglary, to include "(a) Breaking or violently detaching any part, internal or external, of the building; (b) Opening, for the purpose of entering therein, any outer door of a

building or of any room, apartment or set of apartments therein separately used and occupied, . . ."

To break into a building, therefore, a person must either break or violently detach any part, internal or external, of a building, or must open, for the purpose of entering therein, any outer door of a building, or of any room therein.

The trouble is that both instructions No. 4 and No. 5 defined "entering" and there was no definition given to the jury of "breaking." That constituted reversible error.

DONWORTH, J., concurs with SCHWELLENBACH, C. J.

