Honorable Hans Dunshee State Representative, 39th District P. O. Box 40600 Olympia, WA 98504-0600
Dear Representative Dunshee:
By letter previously acknowledged, you have asked for our opinion on a question we have paraphrased as follows:[1]
 Given the language of Initiative Measure No. 713 (RCW 77.15.192 through .198), is it unlawful to use a mole trap which utilizes a spring mechanism to pierce the mole's body?
 BRIEF ANSWER
A mole trap which pierces the mole's body with a spring mechanism is a "body-gripping trap" as defined in RCW77.15.192. RCW 77.15.194(1) makes it unlawful to use any "body-gripping trap" for recreation or commerce in fur. If the purpose of use is not recreation or commerce in fur, certain "body-gripping traps" may be used pursuant to special permits granted by the Washington Department of Fish and Wildlife under RCW 77.15.194(4). However, body-piercing mole traps are not among the types of traps permitted under this subsection. We therefore conclude that Initiative Measure 713 (I-713) prohibits the use of such traps.
 ANALYSIS
Your question concerns the interpretation of I-713, which was approved by the voters at the November 2000 general election. Laws of 2001, ch. 1, codified as RCW 77.15.192 through .198. This measure makes it unlawful to trap or to poison animals in specified ways. Specifically, you ask whether the provisions of the initiative prohibit or limit the use of mole traps which capture moles by means of a "spring mechanism" which pierces the body of the mole.
RCW 77.15.192 contains definitions of terms used in I-713. The term "animal" includes "any nonhuman vertebrate."[2]
RCW 77.15.192(1). The answer to your question depends on the definition of the term "body-gripping trap":
 "Body-gripping trap" means a trap that grips an animal's body or body part. Body-gripping trap includes, but is not limited to, steel-jawed leghold traps, padded-jaw leghold traps, Conibear traps, neck snares, and nonstrangling foot snares. Cage and box traps, suitcase-type live beaver traps, and common rat and mouse traps are not considered body-gripping traps.
RCW 77.15.192(2). You have asked about a type of mole trap which is not an example of any of the specific types of trap listed in this subsection (either those listed as "included" in the term "body-gripping trap" or those listed as "excluded" from that term). The trap you have asked about does not "grip" the animal in the same way as leghold traps, neck snares, or foot snares, but it does immobilize the trapped animal by piercing its body with a sharp rod activated by a spring mechanism. Thus impaled, the animal is held in place and cannot escape; the animal is also probably killed or at least seriously wounded. The question becomes: Does a trap which pierces and impales an animal's body come within the statutory definition of "body gripping trap"?[3]
Given the abstract question of whether the term "body-gripping trap" includes a "body-piercing trap", it would be possible to engage in two modes of analysis. Under one, the term "gripping" would be distinguished from the term "piercing" to emphasize that ordinarily, these two words would not be used synonymously. The terms "he gripped the animal's paw" and "he pierced the animal's paw" would not likely be used interchangeably. This analysis would lead to the conclusion that because gripping and piercing are commonly understood to be two different things, a body-piercing trap should not be defined as a body-gripping trap. This analysis, in leading to the conclusion that a "body-piercing" trap is not a "body-gripping" trap, would result in making it lawful to trap any species of animal so long as the trap goes beyond merely gripping the animal's body and actually pierces the skin. This result seems artificial in light of Initiative 713's obvious purpose of reducing the use of traps that cause pain or injury to animals and its stated purpose of avoiding injuries to people or pets.
Under the second mode of analysis, however, piercing the body of an animal can be conceptualized as an extreme form of "gripping". Anyone who grips an object very tightly, or uses a sharp implement for that purpose, may discover that the object has been pierced or punctured. As suggested above, actually piercing the body of an animal is necessarily more invasive and injurious than merely "gripping" it. Furthermore, the initiative's stated purpose is partially "to protect people and domestic pets". Laws of 2001, ch. 1, § 1. In this regard, a "body-piercing" trap is as much a threat to the safety of people or pets as a trap which merely grips the body without piercing it.[4]
Given the stated purpose of the initiative, we cannot discern any basis to distinguish between trapping devices that pierce the animal's body and those which merely grip it. When faced with determining "the meaning of words used but not defined within a statute", the courts will "give careful consideration to the subject matter involved, the context in which the words are used, and the purpose of the statute." City of Tacoma v. Taxpayers of Tacoma,108 Wn.2d 679, 693, 743 P.2d 793 (1987) (citing State v. Stockton,97 Wn.2d 528, 533, 647 P.2d 21 (1982)). If statutory language is susceptible to two constructions, one of which will defeat the purpose of the statute and the other which will promote the purpose, courts will adopt the construction that promotes the overall purpose. City of Seattle v. Fontanilla,128 Wn.2d 492, 498, 909 P.2d 1294 (1996). Thus, applying these principles of statutory construction, the second mode of analysis is the proper one and leads to the conclusion that body-piercing mole traps as described above meet the definition of "body-gripping trap" in RCW 77.15.192(2).
In addition to this analysis of the actual language of the statute, we also conclude that "body-piercing" traps are "body-gripping traps" by application of the traditional legal maxim of ejusdem generis. Ejusdem generis is a Latin term used to describe a principle of interpreting general words or phrases used in the law together with specific examples. As one court expressed it, "the ejusdem generis rule requires that general terms appearing in a statute in connection with specific terms are to be given meaning and effect only to the extent that the general terms suggest items similar to those designated by the specific terms." Dean v. McFarland, 81 Wn.2d 215, 221, 500 P.2d 1244
(1972). See, e.g., State v. Thompson, 38 Wn.2d 774,232 P.2d 87 (1951); AGO 1994 No. 6; and AGO 1988 No. 13, all applying the same principle.
RCW 77.15.192 provides a list of examples of traps intended to be included in the term "body-gripping trap" and a shorter list of examples of traps intended to be excluded from the term. Those included are: steel-jawed leghold traps, padded-jaw leghold traps, Conibear traps, neck snares, and nonstrangling foot snares. The principle of ejusdem generis enjoins us to examine the specific traps listed (to determine what common characteristic they might have) so as to suggest what types of traps not specifically named might also be "body-gripping traps" as defined in the statute. In this regard, we are guided by (1) what ordinary citizens would understand as the meaning of the various types of traps listed[5] and by (2) some additional definitions contained in the rules adopted by the Washington Department of Fish and Wildlife to implement I-713. For instance, WAC 232-12-142(d) defines "Conibear or Conibear-type trap" to mean "any trap of various manufacturers having design and operational characteristics essentially the same as or like that developed by Frank Conibear and designed and set to grip and hold an animal's body across its main axis." Subsection (f) of the same rule defines "nonstrangling-type foot snare" to mean "a cable or wire designed and set to encircle and hold an animal's foot or limb." Finally, the term "padded foot-hold trap" means "a trap designed and set to grip the foot of an animal, both jaws of which are covered with rubber pads having a minimum thickness of one-eighth inch." WAC 232-12-142(1)(g).
From these definitions, we note that all of the traps listed as included in the definition of "body-gripping trap" have a common characteristic — they restrain the animal's freedom of movement by physically grasping either the animal's whole body or a portion of the body (such as a leg). Furthermore, we understand that some of the listed traps (such as foot snares) are merely designed to restrain the animal's movement, keeping the animal alive until the trapper arrives, while others (such as Conibear traps) are designed to kill the trapped animal. By contrast, most of the traps listed as excluded from the term "body-gripping traps" — cage and box traps, and suitcase-type live beaver traps — do not touch or grasp the animal's body at all. They imprison the animal in a box or cage, but within that limited space, the animal's body remains intact and the animal has some freedom of movement.[6]
In other words, the statutory definition excludes traps which enclose an animal (depriving it of freedom of movement but not directly affecting the animal's body) while including traps which grasp, encircle, or otherwise directly touch and restrain the animal's body. Following that pattern, we conclude that a "body-piercing" trap, which restrains an animal by not merely grasping or encircling it but by impaling it, presents all of the characteristics of "body-gripping traps" and perhaps more, because these traps are designed to restrain (and likely to wound or kill) the animal by piercing its body with a foreign object. Any animal thus impaled is as securely restrained in movement as an animal caught in a leg snare and is at least superficially wounded by the piercing of its body.[7]
Thus, we conclude that such traps "grip" the body as surely as those which only encircle or press, and they therefore fall within RCW 77.15.192(2)'s definition of "body-gripping trap".
Having concluded the described mole traps are "body-gripping" traps, the next question is whether use of these traps is unlawful under the initiative. We begin with an analysis of the wording and structure of RCW 77.15.194, the section of the initiative that declares certain types of traps unlawful. Section 77.15.194 contains five subsections. The first three subsections each describe conduct that is unlawful, as follows:
 (1) It is unlawful to use or authorize the use of any steel-jawed leghold trap, neck snare, or other body-gripping trap to capture any mammal for recreation or commerce in fur.
 (2) It is unlawful to knowingly buy, sell, barter, or otherwise exchange, or offer to buy, sell, barter, or otherwise exchange the raw fur of a mammal or a mammal that has been trapped in this state with a steel-jawed leghold trap or any other body-gripping trap, whether or not pursuant to permit.
 (3) It is unlawful to use or authorize the use of any steel-jawed leghold trap or any other body-gripping trap to capture any animal, except as provided in subsections (4) and (5) of this section.
RCW 77.15.194(1)-(3). Subsection (1) makes it unlawful to use any body-gripping trap "to capture any mammal for recreation or commerce in fur." Note that this prohibition (a) applies only to mammals, unlike other provisions of the initiative, and (b) flatly prohibits body-gripping traps used for recreation or commerce in fur, with no exceptions and no provision for permitted use.[8]
RCW 77.15.194(3) makes it unlawful to use a body-gripping trap "to capture any animal, except as provided in subsections (4) and (5) of this section." Note that this language (a) relates to all animals (not just mammals) and (b) has no limitation based on the motive for trapping, but (c) permits certain traps (but not all body-gripping traps) when permitted by the director of Fish and Wildlife or used by federal agents. Thus, subsections (1) and (3) operate independently, although they overlap in certain ways. You have inquired whether subsection (3) is modified by the terms of subsection (1), and thus limited to trapping for recreation or commerce in fur. We see no basis in the text of the initiative to imply such a modification. Each subsection independently defines a class of conduct that is unlawful, and neither subsection (1) nor subsection (3) modifies the language of other subsections.
The question then becomes whether the described type of mole trap can be permitted under subsection (4) of RCW 77.15.194, which allows the state Department of Fish and Wildlife to issue special trapping permits allowing the use of some "body-gripping traps" (but not all types) if any of the following conditions are met: (a) the trapping is needed to protect people from threats to their health and safety; (b) the trapping is necessary to abate an "animal problem" which threatens to damage timber, or to injure livestock or domestic animals; (c) the trapping is the only practical means of protecting threatened or endangered species; or (d) the trapping is for the conduct of legitimate wildlife research.[9]
As noted above, RCW 77.15.194(3) allows some uses of certain body-gripping traps if the motive is not recreation or commerce in fur[10], but the permitted types are listed at the beginning of RCW 77.15.194(4): "a Conibear trap in water, a padded leghold trap, or a nonstrangling type foot snare."[11]
These categories clearly do not include types of traps which, as described in your question, utilize a spring mechanism to pierce a mole's body. Thus, even though the director might theoretically permit mole trapping for one or more of the purposes listed in subsection (4), the statute does not allow permits for the type of trap you have asked about.[12]
Because "body-piercing" mole traps are not among the types of traps listed in RCW 77.15.194(4) for permissible use with a permit, and because these traps meet the statutory definition of "body-gripping" traps, it does not appear that these particular traps may be lawfully used in Washington, even with special permits. We understand that some of the proponents of I-713 have stated that it was not their intent to prohibit the trapping of moles or the use of traps commonly used for that purpose. Whatever their intent might have been, we have no choice but to interpret the specific language set forth in the measure and approved by the voters until the subsequent adoption of an amendment by the Legislature or by another initiative measure.
We trust the foregoing will be of use to you.
Very truly yours,
JAMES K. PHARRIS Senior Assistant Attorney General
[1] Your request contained three separate questions, all relating to the use of mole traps and I-713. In the course of our analysis, we will discuss the related issues raised in your original questions.
[2] In this opinion, we use the term "animal" as used in the initiative; the term could include birds, fish, reptiles, and amphibians, as well as non-human mammals of any species.
[3] Bills were introduced in both the 2001 and 2002 sessions of the Legislature to clarify the applicability of Initiative 713 to mole traps, or to modify or even repeal the initiative. None of these bills were enacted, however, so we must interpret the language of the initiative as originally adopted.
[4] We recognize that "body-gripping traps" vary greatly in the danger they present to humans and domestic pets, depending on their design and the way they are placed on used. The initiative, however, addresses its restrictions to all "body-gripping" traps and does not provide a basis for classifying on the basis of the damage they might cause or the species of animal they target.
[5] As the expert state agency with regard to wildlife issues, the Department of Fish and Wildlife (WDFW) is charged with implementing and enforcing I-713. RCW 77.04.012. WDFW has more specifically defined the general terminology of the initiative that described, prohibited, or permitted trapping devices. When an agency is interpreting the law it administers, courts give substantial weight to the agency's interpretation. Renton Educ.Ass'n v. Public Empl. Rel. Comm'n ,101 Wn.2d 435, 680 P.2d 40(1984). We have thus looked to the regulations adopted by WDFW ininterpreting the specific trapping terms used in I-713.
[6] The other types of traps listed in RCW 77.15.192(2) as not "body-gripping traps" are "common rat and mouse traps". These common traps do physically touch the animal and restrain it from moving, and they may also kill or wound the animal. Rat and mouse traps, it would appear, are excluded from the term "body-gripping trap" even though they grip the body of an animal, based on a policy judgment that such common traps should be allowed notwithstanding. The drafters of the Initiative, in contrast, omitted any direct mention of mole traps. This omission makes it difficult to apply the same type of policy judgment as may underly the exclusion of "common rat and mouse traps" to mole traps. SeeState v. Refuerzo , 102 Wn. App. 341, 347, 7 P.3d 847 (2000)(applying the maxim that the expression of one thing is theexclusion of others — expressio Unius Est ExclusioAlterious).
[7] Thus, for instance, an animal caught in a cage trap can be released with little or no lasting harm to the animal's health, and even a padded foot snare is designed not to harm the animal during its period of restraint. If a "body-piercing trap" catches an animal, the animal inevitably suffers a wound, and there is no possibility of releasing the animal unharmed.
[8] Subsection (2) of RCW 77.15.194 makes it unlawful to knowingly buy, sell, barter, or exchange the raw fur of a mammal, or a mammal trapped with a body-gripping trap. This provision is beyond the scope of our current discussion.
[9] Subsection (5) of RCW 77.15.194 permits federal fish and wildlife agents to use certain traps to protect threatened or endangered species. Like subsection (2), this language is beyond the scope of our analysis.
[10] Moles are not often trapped for recreation or commerce in fur, so RCW 77.15.194(1) probably does not come into play here.
[11] Conibear traps may not be used, even with a permit, for wildlife research purposes. RCW 77.15.194(4)(d).
[12] We will not speculate about the extent to which the director might find it appropriate to permit mole-trapping or about the types of traps which might be allowed under such permits.