[No. 4408-II.   Division Two.   October 12, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY R. SIMMONS, *Appellant*.

*John L. Farra,* for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* for respondent.

REED, C.J.—Defendant Jeffrey R. Simmons appeals his conviction of taking a motor vehicle in violation of RCW 9A.56.070.[1] Counsel for the defendant seeks to withdraw

---

[1] RCW 9A.56.070, Washington's "joyriding" statute, provides two methods by which a single offense may be committed. The defendant was convicted of the initial theft section. The statute provides:

"Taking motor vehicle without permission. (1) Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of taking a motor vehicle without permission.

"(2) Taking a motor vehicle without permission is a class C felony."

based on his belief that no reasonable grounds for appeal exist. *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967); *State v. Theobald,* 78 Wn.2d 184, 470 P.2d 188 (1970). Consequently, the State moves for dismissal. *Id.* Because we find error in the trial court's refusal to give a proposed jury instruction concerning an intoxication defense, we deny both motions, reverse the conviction and remand this case for a new trial.

The defendant testified that he consumed a large quantity of vodka and beer during the day and early evening of February 17, 1979 and, thus, remembers nothing about his activities that night. Shortly after 9 p.m. on February 17, Jim Palmer reported that his pickup truck had been taken from his Moclips residence without his permission. At approximately 1 a.m., Quinault tribal police officers followed a suspicious vehicle to a gravel pit. When the officers arrived, they discovered it was Palmer's truck, the driver's door was open, but no one was around. Shortly thereafter, Simmons and his cousin were found hiding near the truck behind a pile of stumps. Several witnesses testified that Simmons appeared intoxicated when he was driving the truck and at the time of his arrest. One stated that Simmons did not seem to know where he had obtained the truck.

This case turns on whether the trial court properly refused to give defendant's jury instruction pertaining to an intoxication defense. The instruction, as embodied in WPIC 18.10, 11 Wash. Prac. 122 (1977), was proposed as follows:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular kind or degree of crime, the fact of intoxication may be taken into consideration in determining such mental state.[2]

---

[2]WPIC 18.10 closely parallels RCW 9A.16.090.

Instead of giving defendant's proposed instruction, the trial court instructed the jury that "no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition."

Whether defendant was entitled to an intoxication defense instruction depends on whether a particular mental state was a required element of the offense charged. *See* RCW 9A.16.090. Further, the defendant must have presented substantial evidence of (1) the fact of drinking; and (2) the effect of his drinking upon his mental processes, specifically his ability to acquire the requisite mental state. *State v. King,* 24 Wn. App. 495, 601 P.2d 982 (1979); *State v. Thompson,* 17 Wn. App. 639, 564 P.2d 820 (1977); *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). *But see State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981).

We are convinced that a particular mental state is a necessary element of the offense. Although the section of RCW 9A.56.070 (under which defendant was convicted) contains no express requirement that the accused *know* at the time of the taking that he does not have permission to do so, this knowledge element has been held to be implicit in the phrase "'without the permission of the owner or person entitled to possession thereof.'" *State v. Robinson,* 78 Wn.2d 479, 482, 475 P.2d 560 (1970); *State v. Wait,* 9 Wn. App. 136, 509 P.2d 372, 65 A.L.R.3d 578 (1973); *State v. Bailey,* 4 Wn. App. 450, 481 P.2d 565 (1971). Knowledge, then, is an element of the offense but the question remains whether it is a "mental state" as contemplated by RCW 9A.16.090. We believe that RCW 9A.08.010, which defines four kinds of culpability, including "knowledge," requires that we conclude that knowledge is a mental state. *State v. Norby,* 20 Wn. App. 378, 579 P.2d 1358 (1978).

The remaining inquiry concerns defendant's evidentiary burden. We believe that this burden was satisfied by presentation of ample evidence that defendant had been drinking and testimony suggesting that his ability to acquire the requisite mental state had been impaired. *State v. King, supra.* Defendant was, therefore, entitled to an instruction

concerning an intoxication defense. Because of our resolution of this issue, we do not address any of the matters raised by the defendant, pro se.

It may seem inappropriate, under these circumstances, that one may be relieved of all responsibility for his actions because of voluntary intoxication. We believe, however, that the above result is compelled by *Robinson* and RCW 9A.16.090. We are concerned that the statute, as drafted, may relieve one who has voluntarily become intoxicated of all criminal responsibility except for those few acts to which strict liability attaches.[3] This concern, however, must be addressed by the legislature, not this court.

---

[3] The new criminal code is an amalgam of differing proposals for reform. One such proposal, the "Orange Code," advocated an intoxication defense substantially fashioned after Model Penal Code § 2.08. The drafters noted that the Orange Code provision was "entirely consistent" with RCW 9.01.114—its predecessor. Legislative Council Judiciary Committee, *Revised Washington Criminal Code*, Comment, at 53 (1970). RCW 9.01.114 was recognized as a defense where "specific intent" was an element of the crime charged, but not where "general intent" was sufficient to sustain a conviction. *State v. Mriglot*, 88 Wn.2d 573, 564 P.2d 784 (1977); *see also Proctor v. United States*, 177 F.2d 656 (D.C. Cir. 1949) (intoxication no defense to using an automobile without the owner's consent). The "Prosecutor's Code" was proposed by the prosecuting attorney's association in 1973 as a response to the Orange Code. It recommended no change with respect to the intoxication defense. Washington State Association of Prosecuting Attorneys, *Proposed Washington Criminal Code* § 9A.16.080, at 17 (1973).

Faced with a variety of proposals, the legislature essentially reenacted RCW 9.01.114. The critical and only difference between the new code section and its predecessor is that the words "mental state" are substituted for "purpose, motive or intent." Because none of the proposals for reform expanded the intoxication defense, it is highly probable that the above change was made merely to make the new section compatible with the new language defining the four kinds of culpability, or mental states. *See* RCW 9A.08.010. This latter change apparently was designed to circumvent the troublesome distinction between "general" and "specific" intent. The result is that the new code section, as drafted, greatly expands the intoxication defense because nearly all crimes require, as an element, one of the four mental states described in RCW 9A.08.010. *See* Comment, *A Hornbook to the Code*, 48 Wash. L. Rev. 149, 165 (1972). Consequently, the distinction between general and specific intent has been ignored—a result clearly inconsistent with prior case law which the drafters of the new code purported to follow.

Reversed and remanded.

PEARSON and PETRICH, JJ., concur.

Reconsideration denied January 6, 1982.

Review denied by Supreme Court March 25, 1982.