[No. 51401–1.  En Banc.  April 2, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN
KENNETH COATES, *Appellant.*

*Katherine Steele Knox,* for appellant.

*Curtis Ludwig, Prosecuting Attorney,* and *Andrew K. Miller, Deputy,* for respondent.

DORE, J.—Steven Kenneth Coates appeals his conviction of assault in the third degree. We hold that (1) the trial court properly denied defendant's motion to suppress evidence of a search on the basis the warrant affidavit set forth sufficient facts, independent of an illegally obtained statement, to afford the issuing magistrate probable cause, (2) the State does not have the burden of disproving a defendant's voluntary intoxication, and (3) evidence of voluntary intoxication cannot be used to negate the mental state of criminal negligence.

The conviction is affirmed.

## FACTS

At approximately 11:30 p.m. on September 15, 1984, as Matt Long drove home from his job as a Hanford patrolman, he observed a blue Thunderbird strike another automobile. This second car pulled to the side of the road, but the Thunderbird continued; the officer followed the Thunderbird. Approximately a half mile farther, the Thunderbird's engine died, and it also pulled off to the side of the road. The officer stopped his vehicle behind the car. The defendant exited the driver's side and walked toward the officer's vehicle.

At this juncture, Long identified himself as a police officer and told defendant that he should return to the accident scene. Defendant replied that he was a Navy corpsman and could help if anyone were injured. Defendant returned to his car, spoke briefly with his passenger Dana Soderquist, and then agreed to walk back to the scene of the accident.

As they approached the scene, the officer and defendant observed a police vehicle with emergency lights flashing. Defendant stared at the lights for a few moments, then said that he would not return to the scene. By this time Officer Long had come to question defendant's mental stability, so

he agreed that defendant could return to his own car. As they neared the officer's truck, the defendant stabbed Officer Long twice in the back, and then returned to his car.

The state trooper, who responded to the accident, found Officer Long. Long identified the defendant as the person who had stabbed him. Subsequently defendant and Soderquist were arrested and searched. Although a knife was discovered on the person of Soderquist, the officers did not find the knife used by defendant in the assault. Detective John Hodge of the Benton County Sheriff's Department sealed defendant's car with evidence tape, and the car was towed to the sheriff's office where it was impounded.

Detective Hodge returned to the jail and, after advising defendant of his rights, questioned him about the assault. Defendant, who was obviously intoxicated, said he could not believe anyone could have been stabbed. Replying to the detective's question as to what had happened, the defendant said that he and the officer fell.

Detective Hodge asked the defendant to take a Breathalyzer; defendant refused stating he wanted to speak to an attorney first. After speaking to his attorney, defendant refused to answer any further questions. The defendant was then returned to his cell.

Shortly thereafter, the state trooper pursuant to his investigation of the accident and DWI charge contacted defendant. The state trooper also requested defendant to take a Breathalyzer test. At first Coates refused, but later agreed. The Breathalyzer test, administered over 4 hours after the accident and assault, showed defendant as having a blood alcohol level of .16 percent.

Benton County Deputy Sheriff Mark Mann was present during the trooper's administration of the test. Apparently unaware defendant had invoked his right to an attorney, Deputy Mann questioned him about the assault. Defendant stated that the knife used in the assault was underneath the front seat of the car.

Deputy Mann then advised Detective Hodge that defendant had revealed the location of the weapon used in

the assault. Detective Hodge prepared an affidavit for a search warrant, which read in pertinent part:

As a result of [the described traffic] accident, an off–duty Kennewick Reserve Officer stopped to contact the above suspect vehicle. In this contact the . . . Officer was in contact with the driver, one Steven K. Coates. As a result of that contact the . . . Officer was stabbed twice in the back. *Based on a statement given by the suspect, Coates, to Deputy Mann . . . the knife used in assault has been placed under the seat of the 1981 blue Thunderbird.*

Based on a statement . . . by the passenger/witness, one Dana R. Soderquist, that after the contact between suspect Coates and the victim . . . Coates re–entered the vehicle and . . . remained in the vehicle . . . until arrested by officers. In a search incident to arrest, suspect Coates was not found in possession of any knives.

Also, said affiant was told by witness, Soderquist, that . . . he (Soderquist) saw suspect (Coates) in possession of a switchblade/spring operated Stelletto [*sic*] type knife [that day].

(Italics ours.) Exhibit 2.

The following morning Detective Hodge obtained a search warrant for defendant's impounded vehicle. A knife with bloodstains matching Long's blood type was found in the vehicle.

Defendant was then charged with one count of second degree assault, and the prosecutor sought to enhance defendant's sentence under the new deadly weapon statute, RCW 9.94A.125. Defendant moved to suppress the evidence of the knife on the ground that it had been obtained as fruit of his illegally obtained statement. The trial court denied the motion in part because the court believed probable cause existed. The trial court also held that, in any event, the inevitable discovery exception to the exclusionary rule applied, rendering the knife admissible even if it was the product of an illegal search and seizure.

At trial Long testified to the circumstances of the assault. The subject knife was admitted into evidence. Defendant denied all wrongdoing, testifying that he could not remem-

ber the hit–and–run incident or the assault. Defendant stressed that he had consumed a great deal of alcohol that evening.

Upon defense counsel's request, the trial judge instructed the jury on the "intoxication defense" and on the State's burden of proving that defendant's intoxication did not prevent the defendant from forming the particular requisite mental state. Over defense counsel's objection, however, the trial judge instructed the jury that this defense applies only where the mental state is intent, knowledge, or reckless-ness. The trial judge specifically precluded the jury from considering Coates' intoxication in determining whether he was guilty of the lesser–included offense of third degree (negligent) assault.

The jury found defendant *not guilty* of second degree assault, but *guilty* of assault in the third degree. Under the new sentencing act, a deadly weapon finding does not enhance a sentence for this latter offense (*see* RCW 9.94A-.310), so the jury was not asked to answer the deadly weapon special verdict form.

Defendant appealed his conviction directly to this court.

## VALIDITY OF SEARCH WARRANT

The search warrant for defendant's car was obtained on the basis of an affidavit which set forth information he pro-vided after he invoked his right to remain silent. The State concedes this information was illegally obtained. *See Mich-igan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975). Defendant argues that because the information was illegally obtained, it should be suppressed. The issue pre-sented is whether this court should adopt the "inevitable discovery" rule recently articulated by the United States Supreme Court in *Nix v. Williams,* 467 U.S. 431, 81 L. Ed. 2d 377, 104 S. Ct. 2501 (1984). Defendant believes the search can be upheld only under the inevitable discovery rule, which he contends is inconsistent with this court's interpretation of Const. art. 1, § 7.

Defendant's reasoning is incorrect. The inevitable discov-

ery rule enunciated in *Nix* is a means of determining whether illegally seized evidence should be admitted notwithstanding the exclusionary rule. The first issue in this case, however, is whether defendant's knife was illegally seized. If we conclude the knife was legally seized, we need not decide the propriety of the inevitable discovery rule.

The alleged illegality in this case occurred when officers questioned defendant after he invoked his right to remain silent. If the warrant had been obtained on that basis alone, it would have been completely defective. However, a search warrant is not rendered totally invalid if the affidavit contains sufficient facts to establish probable cause independent of the illegally obtained information. *See United States v. Christine,* 687 F.2d 749, 758 (3d Cir. 1982) (involving reduction of the overly broad portions of a search warrant); *United States v. Fitzgerald,* 724 F.2d 633 (8th Cir. 1983), *cert. denied,* 466 U.S. 950 (1984).

In *State v. Cockrell,* 102 Wn.2d 561, 689 P.2d 32 (1984), this court specifically relied upon *Christine* to uphold a challenged search warrant. *Cockrell,* at 570. In *Cockrell,* a warrant was issued for the search of the defendants' property, and all persons, vehicles and buildings in the area. The trial court found the warrant affidavit insufficient to establish probable cause to search the defendants' residence, outbuildings, and any persons on the property. *Cockrell,* at 569. On appeal, the defendants challenged the sufficiency of probable cause to search the real property itself, arguing that the valid portions of the warrant were not severable from the invalid portions. *Cockrell,* at 570. This court disagreed, holding that although insufficient probable cause existed to search certain buildings or persons on the defendants' property, this defect did not invalidate that portion of the warrant supported by probable cause. *Cockrell,* at 571.

This court employed a similar method of analysis in *State v. Cord,* 103 Wn.2d 361, 693 P.2d 81 (1985), where a defendant challenged a warrant affidavit alleging a material omission or misrepresentation. In *Cord,* this court adopted

a rule enunciated in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), which requires a hearing to determine the validity of a defendant's allegations that the warrant affidavit contains a false statement. Under *Franks,* if a defendant establishes his allegations by a preponderance of the evidence, the defective statement is stricken from the affidavit. If, without the defective statement, the affidavit fails to support a finding of probable cause, the warrant is void and the evidence must be excluded. *Franks v. Delaware, supra. Accord, State v. Cord, supra.* On the other hand, "where probable cause is established *independently* of the . . . challenged statements," the warrant can be upheld without conducting a hearing. *State v. Casal,* 103 Wn.2d 812, 820-21, 699 P.2d 1234 (1985).

█ Read together, *Cockrell, Cord* and *Casal* support the proposition that the search warrant challenged in this case can be upheld despite the exclusion of defendant's illegally obtained statement if the remaining information in the warrant affidavit independently established probable cause to believe the weapon was in his car. This proposition does not run afoul of the court's stated view that Const. art. 1, § 7 serves to protect personal privacy rights, rather than curb governmental actions. *State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982).

The question is whether probable cause existed to believe the knife used in the assault was in defendant's car, independent of his illegally obtained statement. The warrant affidavit stated: (1) the victim was stabbed twice as a result of his contact with defendant; (2) after the stabbing, defendant returned to his car, where he remained until his arrest; (3) no knife was found on defendant's person at the time of his arrest; (4) defendant had been in possession of a knife earlier that day.

█ A reviewing court accords great deference to the issuing magistrate's determination of probable cause. *State v. Cord,* 103 Wn.2d at 366. From the foregoing information, a reasonable person could conclude that the knife with

which defendant stabbed the victim probably could be found in defendant's car. Therefore, the probable cause requirement for the issuance of a warrant was satisfied. *See State v. Cord, supra* at 365. Because the warrant was supported by probable cause, we find that no illegal search and seizure occurred, and the knife was properly admitted. We affirm the court's denial of defendant's motion to suppress.

VOLUNTARY INTOXICATION

The second issue is whether voluntary intoxication is an affirmative defense which requires the State to disprove defendant's voluntary intoxication beyond a reasonable doubt.

The voluntary intoxication statute, RCW 9A.16.090, provides:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

RCW 9A.16.090 states that voluntary intoxication does not make an act "less criminal", while on the other hand the statute states that intoxication "may be taken into consideration" by the jury in determining whether the defendant acted with the requisite mental state. These provisions indicate how the statute is to be employed. Evidence of voluntary intoxication cannot be employed to make the act "less criminal". This means that such evidence cannot form the basis of an affirmative defense that essentially admits the crime but attempts to excuse or mitigate the actor's criminality. Rather, evidence of voluntary intoxication is relevant to the trier of fact in determining in the first instance whether the defendant acted with a particular degree of mental culpability. The voluntary intoxication statute allows the trier of fact to consider the defendant's intoxication in assessing his mental state; the statute does not require that consideration to lead to any particular

result. In this sense the statute describes the manner in which a particular type of evidence is to be employed, in much the same way as neutral instructions describe the use of inferences or circumstantial evidence.

The State always has the burden of proving the defendant acted with the necessary culpable mental state. Generally, evidence of intoxication is relevant to this question, but it is inaccurate to think of intoxication as forming some element that the State must negate, just as it would be erroneous to hold that the State has the burden of proving or disproving circumstantial evidence.

The defendant's reliance on *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984) and *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983) is misplaced. Both *McCullum* and *Acosta* deal with the manner in which a defendant's claim of self–defense must be presented to the jury. *McCullum* holds that the State has the burden of proof on that issue and that it is constitutional error to instruct the jury to the contrary. *Acosta* holds that, in evaluating the trial court's instructions on this issue, "the test is whether the jury was informed, or could understand from the instructions as a whole, that the State bears the burden of proof on self–defense." *Acosta,* at 622. Under Washington law, an act done in self–defense is lawful. RCW 9A.16.020, .030. If the jury finds the claim of self–defense to be meritorious, it should find the defendant not guilty. Since there is, therefore, some concrete result to be obtained by proving or disproving a claim of self–defense, it makes sense to tell the jury that one party or the other has the burden of proof on this issue. As recently stated in *State v. Fuller,* 42 Wn. App. 53, 55, 708 P.2d 413 (1985), *review denied,* 105 Wn.2d 1008 (1986):

> An instruction on burden of proof similar to the one given on self–defense need not be given because the toxic effect of a drug upon a person's capability of acting knowingly is not a legally recognized defense. A criminal act committed by a voluntarily intoxicated person is not justified or excused. RCW 9A.16.090. Intoxication may

raise a reasonable doubt as to the mental state element of the offense, thus leading to acquittal or conviction of a lesser included offense, but evidence of intoxication does not add another element to the offense. Thus the jury was correctly instructed in the language of RCW 9A.16-.090 as follows:

Intoxication. No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

That [defendant] knowingly committed the act is just one of several facts the State had to prove and, but for the statute, RCW 9A.16.090, the particular evidence of intoxication need not be singled out for special treatment. *See State v. Rice,* 102 Wn.2d 120, 683 P.2d 199 (1984).

It is unclear how either party can logically be said to have the ultimate burden of proof under RCW 9A.16.090. Also, there does not seem to be any way to convey the burden of proof concept to the jury without implying that intoxication is something the jury must, rather than may, consider. Finally, imposing a burden of proof as to intoxication would seem to ignore the fact that intoxication is not an all–or–nothing proposition. A person can be intoxicated and yet still be able to form the requisite mental state, or he can be so intoxicated as to be unconscious. Under RCW 9A.16.090, it is not the fact of intoxication which is relevant, but the degree of intoxication and the effect it had on the defendant's ability to formulate the *requisite mental state.* Thus, an instruction which requires one party or the other to prove or disprove the fact of intoxication would be incomplete at best.

In summary, intoxication is not a "defense" to a crime. Evidence of intoxication may bear upon whether the defendant acted with the requisite mental state, but the proper way to deal with the issue is to instruct the jury that

it may consider evidence of the defendant's intoxication in deciding whether the defendant acted with the requisite mental state. *See* WPIC 18.10.

### CRIMINAL NEGLIGENCE

Having set forth the proper interpretation of the voluntary intoxication statute, we now turn to how evidence of voluntary intoxication relates particularly to "criminal negligence" as that term is now defined.

■ When the Legislature adopted the new criminal code, it replaced the concept of general and specific intent with four levels of culpability: intent, knowledge, recklessness, and negligence. RCW 9A.08.010; *see State v. Allen,* 101 Wn.2d 355, 359, 678 P.2d 798 (1984). At the same time, the Legislature amended the intoxication statute so as to refer to "particular mental state" rather than "purpose, motive, or intent." Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.16.090.

Criminal negligence is defined as a person's "[failure] to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation." RCW 9A.08.010(1)(d). Criminal negligence is the requisite mental state in the crime of assault in the third degree. *See* former RCW 9A.36.030(b).[1] Because this mental state is based on a reasonable person standard, evidence of defendant's voluntary intoxication cannot work in any way to negate or obviate the mental state. Because of his intoxication, a particular defendant may not act with intent or knowingly inflict grievous bodily harm. Nonetheless, if a reasonable person would have avoided the wrongful act, and the defendant's failure to do so is a gross deviation from this reasonable course of conduct, the defendant has acted with criminal negligence.

In the present case, the "wrongful act" was the stabbing.

---

[1]RCW 9A.36.030 in effect at the time of the incident was subsequently repealed by Laws of 1986, ch. 257, § 9.

Defendant's claimed reason for failing to be aware that the victim was being stabbed was evidently defendant's own intoxication. A reasonable person would not have stabbed the victim, and defendant's action was a gross deviation from the reasonable course of conduct. Consequently defendant was criminally negligent despite his intoxication. This is the proper interpretation to be given the definition of criminal negligence. The trial court did not err in precluding the jury from considering voluntary intoxication as a defense to the charge of third degree assault.

## CONCLUSION

1. We affirm the trial court's denial of defendant's motion to suppress evidence;

2. We hold that the trial court's instructions appropriately precluded the jury from considering intoxication as a defense to the charge of third degree assault; and

3. We affirm the defendant's conviction.

DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

GOODLOE, J. (concurring)—I agree with the majority's resolution of the first and third issues of this case, namely, that the evidence of the knife was properly admitted and that voluntary intoxication is not a defense to a charge of criminal negligence. However, I believe the majority's analysis with respect to the second "issue" on the burden of proving or disproving intoxication is unnecessary to the disposition at hand. Moreover, I think the majority's language in that section conflicts with and confuses its later reasoning as to why criminal negligence is not negated by voluntary intoxication. For these reasons I write separately. If voluntary intoxication cannot negate negligence, then it does not matter who has the burden of proving or disproving intoxication.

The majority concludes that the State does not have the burden of disproving voluntary intoxication beyond a reasonable doubt because such intoxication is not an affirmative defense, but rather is merely "relevant to the trier of

fact in determining . . . whether the defendant acted with a particular degree of mental culpability." Majority opinion, at 889 (construing RCW 9A.16.090). Although I express no opinion on the majority's substantive determination of the burden of proof issue, I do find this language to be problematic. By stating that intoxication is "relevant" to culpability, the majority then seemingly contradicts itself when it holds that intoxication need not have been considered here. See majority opinion, at 892–93. If intoxication is truly "relevant", then it should be submitted to the jury. By conceding relevance under RCW 9A.16.090 in its burden of proof analysis, the majority invites criticism that it is overriding the terms of the statute when it subsequently holds that matters of voluntary intoxication need not go to the jury in criminal negligence cases. See dissent by Pearson, C.J., at 896–98. I do not think the majority's holding that intoxication is not a defense to negligence is inconsistent with the statute. Yet this holding necessarily depends on recognizing that voluntary intoxication is *irrelevant* to the degree of culpability that constitutes criminal negligence.

There is no question that the Legislature has made voluntary intoxication relevant to the determination of whether the defendant acted with "any particular mental state" constituting a necessary element of the crime. *See* RCW 9A.16.090; *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984); *State v. Fuller*, 42 Wn. App. 53, 55, 708 P.2d 413 (1985). Yet it does not necessarily follow from this statutory language that intoxication is relevant to *negligence*. Because negligence does not require any subjective mental condition, it cannot be considered a "mental state" within the meaning of RCW 9A.16.090.

The Legislature has listed four levels of "culpability": intent, knowledge, recklessness, and negligence. RCW 9A.08.010. I submit that only the first three of these may properly be considered mental states. *See* W. LaFave & A. Scott, *Criminal Law* §§ 27, 30 (1972). Intent, knowledge, and recklessness all require a particular subjective aware-

ness. Recklessness, for example, is met when the defendant *"knows of and disregards* a substantial risk that a wrongful act may occur and his disregard . . . is a gross deviation from conduct that a reasonable man would exercise in the same situation." (Italics ours.) RCW 9A.08.010(1)(c). In contrast, criminal negligence is characterized by a solely objective test: *"fail[ure] to be aware* of a substantial risk that a wrongful act may occur and [that] failure . . . constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation." (Italics ours.) RCW 9A.08.010(1)(d). Negligence is essentially a catchall category for persons whose conduct constitutes a gross deviation from reasonable care, yet who cannot be said to be subjectively aware of the risks they create. Since negligence requires no particular level of awareness, it cannot be negated by the fact of intoxication. *See* W. LaFave & A. Scott § 45. *Cf. People v. Garcia,* 250 Cal. App. 2d 15, 21 & n.2, 58 Cal. Rptr. 186 (1967). The actor's state of mind is purely irrelevant to a charge of criminal negligence; all that matters is what a reasonable person would have done.

The voluntary intoxication statute provides in part that intoxication may be taken into consideration in determining the mental state of the accused. RCW 9A.16.090. When the fact of intoxication negates the required mental state for an offense, the accused cannot be found guilty of that offense. At the same time, the statute provides that the mere fact of intoxication does not constitute a defense. For a defendant to use voluntary intoxication as a defense, he or she must show more than the fact of the intoxication; the defendant must show that the intoxication affected his or her mental state to the point where the requisite intent or knowledge, for example, could not be formed. Put differently, the mental state created by the intoxication must be incompatible with that required by the criminal code. *See Fuller,* at 55; *State v. Boyd,* 21 Wn. App. 465, 468–77, 586 P.2d 878 (1978), *rev'd on other grounds sub nom. State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

Looking at the issue in this manner, one can see that intoxication is not incompatible with "fail[ure] to be aware of a substantial risk". RCW 9A.08.010(1)(d). On the contrary, intoxication often is the *cause* of such a failure. *See, e.g.,* Model Penal Code § 2.08, comment 1(d), at 359 (1985). Moreover, intoxication cannot negate negligence since the fact that a defendant is intoxicated has no bearing on how a reasonable person would have acted in the same situation. In contrast, severe intoxication could negate recklessness by rendering the accused incapable of "know[ing] of . . . a substantial risk". RCW 9A.08.010(1)(c). Similarly, severe intoxication could render the accused incapable of forming the requisite mental state for knowledge and intent crimes.

The intoxication statute is concededly somewhat ambiguous in its reference to "any particular mental state", since mental state is often used loosely to mean culpability or fault. Yet this use of the term is inaccurate, for some crimes such as negligence require a form of fault which is not at all mental. *See* W. LaFave & A. Scott, at 192, 194. Therefore, reading the criminal code as a whole and with the object of giving consistent meaning to each part can only lead to one conclusion: Intoxication may operate as a defense only to those crimes requiring actual, subjective mental state and not to criminal negligence which requires merely an objective set of circumstances. *See* W. LaFave & A. Scott § 45. In short, I would hold that voluntary intoxication is irrelevant to a charge of criminal negligence on the ground that negligence does not involve proof of a mental state. Accordingly, I would not reach the burden of proof issue.

PEARSON, C.J. (dissenting)—I concur with the majority's holding that the warrant affidavit contained sufficient facts to establish probable cause independent of the defendant's illegally obtained statement. I dissent from the majority's analysis of the voluntary intoxication statute because I believe the analysis ignores basic axioms of statutory interpretation.

The majority holds that voluntary intoxication can never

be a defense to criminal negligence. The voluntary intoxication statute, RCW 9A.16.090, provides that "whenever the actual existence of *any particular mental state* is a necessary element to constitute a particular species or degree of crime, the fact of [the defendant's] intoxication may be taken into consideration in determining such mental state." (Italics mine.) The defendant contends this defense applies to all four of the particular mental states defined in RCW 9A.08.010; namely, intent, knowledge, recklessness, and criminal negligence. The State argues that public policy considerations require the courts to limit the intoxication defense to the three most culpable mental states, excluding criminal negligence.

There are two Court of Appeals decisions in conflict on this issue. In *State v. Simmons,* 30 Wn. App. 432, 635 P.2d 745 (1981), *review denied,* 97 Wn.2d 1007 (1982), one panel of the Court of Appeals concluded that the adoption of RCW 9A.08.010, with its four levels of culpability, "greatly expands the intoxication defense because nearly all crimes require, as an element, one of the four mental states described in RCW 9A.08.010." *Simmons,* at 436 n.3. Although concerned with the application of the intoxication defense to virtually all crimes, the *Simmons* court believed statutory construction compelled this result. *Simmons,* at 436 n.3.

On the other hand, in *State v. Collins,* 30 Wn. App. 1, 632 P.2d 68, *review denied,* 96 Wn.2d 1020 (1981), another panel of the Court of Appeals concluded that "public policy requires in the event of intoxication as related to homicide . . . it relate only to knowledge or intent . . . but not criminal negligence." *Collins,* at 15. The court did not state whether public policy concerns would compel the same result in nonhomicide cases involving criminal negligence.

As originally enacted, the intoxication statute referred not to "particular mental state", but rather to "particular purpose, motive or intent". Laws of 1909, ch. 249, § 6, p. 891. This court interpreted this phrase to apply to "specific intent" crimes, but not to "general intent" crimes. *See*

*State v. Mriglot,* 88 Wn.2d 573, 564 P.2d 784 (1977).

When the Legislature adopted the new criminal code, it replaced the concepts of general and specific intent with four levels of culpability: intent, knowledge, recklessness and criminal negligence. RCW 9A.08.010; *State v. Allen,* 101 Wn.2d 355, 359, 678 P.2d 798 (1984). *See State v. Griffin,* 100 Wn.2d 417, 418–19, 670 P.2d 265. (1983). At the same time, the Legislature amended the intoxication statute to refer to "particular mental state" rather than "purpose, motive or intent". Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.16.090, p. 830. As noted in *Simmons,* these amendments appear to extend the intoxication defense to all crimes in which one of the four mental states set forth in RCW 9A.08.010 constitutes an element of the crime. *Cf. State v. Griffin, supra* (diminished capacity defense may be instructed upon whenever the evidence reasonably connects the defendant's mental condition at the time of the alleged crime with his ability to possess any of the four mental states described in RCW 9A.08.010). Of course, if a crime includes intoxication as an element of the offense, RCW 9A.16.090 has no applicability.

The Court of Appeals understandably was sensitive to the serious public policy considerations raised by the expanded version of the intoxication defense. Under the rule of lenity, however, criminal statutes should be construed strictly against the State and in favor of the accused. *State v. Thompson,* 38 Wn.2d 774, 779, 232 P.2d 87 (1951); *Seattle v. Green,* 51 Wn.2d 871, 874, 322 P.2d 842 (1958). If the Legislature desires to limit the scope of RCW 9A.16.090 to crimes involving all mental states other than criminal negligence, it is free to amend the statute to reflect that desire. Until then, a defendant should be entitled to an instruction permitting the jury to determine whether the defendant's intoxication precluded formation of the requisite mental state of criminal negligence.

Although the majority decides that voluntary intoxication is not available to the defendant as a defense in this case, it nevertheless proceeds to reach the issue of who

bears the burden of proof of intoxication. Its decision on the burden of proof thus is dicta. However, because the opinion may later be cited as persuasive authority, I feel compelled to point out problems with the court's position.

Initially, one must determine whether intoxication is a "defense" to a criminal act. The answer to this question is not as obvious as one might assume. Compare *State v. Carter*, 31 Wn. App. 572, 643 P.2d 916 (1982) *with State v. Fuller*, 42 Wn. App. 53, 708 P.2d 13 (1985) (which reach conflicting decisions). Responsibility for this ambiguity, however, rests with the Legislature. In RCW 9A.16.090, the Legislature on the one hand states that intoxication does not make an act "less criminal", and on the other states that intoxication "may be taken into consideration" by the jury in determining whether the defendant acted with the requisite mental state. These propositions are contradictory. If a particular mental state must be proved, and the jury may consider the defendant's intoxication in determining whether the defendant acted with that mental state, intoxication must be a defense to a criminal act. If not, RCW 9A.16.090 is meaningless verbiage.

Given that intoxication is a defense of one sort or another, this court must characterize its nature, because in determining what burden of persuasion, if any, the defendant may bear, "'the nature of the defense is a critical consideration.'" *State v. Carter, supra* at 575 (quoting W. LaFave & A. Scott, *Criminal Law* § 8, at 48 (1972)).

As noted by LaFave and Scott, there are three basic types of defenses: those that negate the existence of one of the essential elements of the crime, those that serve as an excuse or justification for commission of the crime, and a third type that does not concern us here. W. LaFave & A. Scott, at 48–49. The defense of voluntary intoxication falls within the first category, those that negate one of the essential elements of the crime—in this case the defendant's state of mind. With respect to these defenses, the rule following *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970) has generally been that the prosecution

bears the burden of proving the nonexistence of a defense which by its terms asserts the absence of an essential element of the crime. *See, e.g., Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975) (violation of due process to require defendant to prove he had acted in the heat of passion to reduce murder to manslaughter). *But see Patterson v. New York*, 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977) (due process clause does not require state to prove beyond a reasonable doubt absence of every defense if too cumbersome, too expensive, and too inaccurate).

*Patterson v. New York, supra,* represents a significant retreat from the principles enunciated in *In re Winship, supra,* and *Mullaney v. Wilbur, supra.* In fact, if RCW 9A.16.090 had placed the burden of persuasion expressly on the defendant, the statute probably would survive Supreme Court scrutiny following *Patterson.* The Legislature, however, failed to expressly allocate the burden of persuasion on either the State or the defendant. As noted in *State v. Acosta,* 101 Wn.2d 612, 615–16, 683 P.2d 1069 (1984):

> [T]he Legislature has clearly provided that a defendant must prove certain defenses by a preponderance of the evidence. *See* RCW 9A.12.010 (insanity); RCW 9A.32-.030(1)(c), .050(1)(b) (felony murder); RCW 9A.40.030 (kidnapping); RCW 9A.44.030 (sexual offenses); RCW 9A.48.060 (reckless burning); and RCW 9A.76.100 (compounding a crime). The Legislature's silence on the burden of proof of self–defense, in contrast to its specificity on these other defenses, is a strong indication that the Legislature did not intend to require a defendant to prove self–defense.

*See also State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983). Likewise, given the Legislature's silence on this issue with respect to the intoxication defense, the prosecution should bear the burden of disproving beyond a reasonable doubt the existence of the defendant's intoxication defense. *Accord, State v. Carter,* 31 Wn. App. 572, 643 P.2d 916 (1982).

For the foregoing reasons, I dissent.

UTTER and BRACHTENBACH, JJ., concur with PEARSON, C.J.

Reconsideration denied June 29, 1987.