# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69968-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON EDWARD MARKLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 3, 2014 |
| | ) | |

VERELLEN, J. — Jason Markley challenges the sufficiency of the evidence supporting his conviction for first degree animal cruelty. He focuses principally on his lack of knowledge of an old, emaciated horse's dietary needs and on his lack of experience with horses. But the reasonable person standard required for criminal negligence is an objective standard that does not vary from person to person based on their individual level of knowledge or experience. Instead, the objective standard asks what a reasonable person would do under similar circumstances. Viewing the evidence and all reasonable inferences in the light most favorable to the State, there is sufficient evidence for a rational trier of fact to conclude that a reasonable person would have realized that the horse was starving and suffering pain for several months. Markley's other arguments are unpersuasive. We affirm the conviction.

FACTS

Markley purchased two horses after Christmas in 2010. Markley had no experience with horses. When Markley paid a farrier to have Alex, the older horse, shod in January 2011, the farrier told Markley that Alex was emaciated.

Markley initially fed Alex high-quality hay from Eastern Washington. But he soon switched to low-quality local hay, which was less expensive. It is undisputed that older horses cannot survive on local hay alone because it does not contain adequate nutrients and calories. Dietary supplements, useful for increasing weight, are available for horses, such as beet pulp, alfalfa pellets, and timothy pellets. Markley gave Alex beet pulp one time in an attempt to increase his weight, but Alex suffered an adverse reaction.[1]

On April 8, 2011, King County Animal Control Officer Jenee Westberg performed a welfare check after receiving two anonymous phone calls about an emaciated horse. Officer Westberg testified that Alex was "clearly emaciated"; his vertebrae were visible, his ribs looked concave, his hip bones protruded out, and his overall physical condition "was quite disturbing."[2] The Henneke scale measures a horse's body condition, ranging from 1 (severely emaciated) to 9 (obese). Officer Westberg scored Alex a 1.2. At Officer Westberg's request, veterinarian Dr. Heather Stewart examined Alex on April 9, 2011. She scored Alex a 1.5 on the Henneke scale. Dr. Stewart testified that Alex needed higher-quality food to supplement his diet. Dr. Stewart estimated Alex's weight at below 750 pounds, whereas similar horses normally weigh 900 to 1100 pounds.

---

[1] Markley had used another supplement to improve Alex's condition after using the beet pulp, but he could not remember the specific supplement that he used.

[2] Report of Proceedings (RP) (Dec. 11, 2012) at 100, 103.

2

Markley voluntarily surrendered Alex to animal control authorities on April 9, 2011, because he was "[u]nable to care for [Alex] properly."[3] Markley never called a veterinarian regarding Alex's condition.

Veterinarian Dr. Hannah Mueller scored Alex a 1 on the Henneke scale in mid-April, indicating that Alex's condition was at "the point before death."[4] In mid-April, Animal Control Sergeant Chelsea Eykel scored Alex a 1.5 on the Henneke scale. Sergeant Eykel testified that Alex was "one of the skinniest horses [she] had seen that was still standing," and Alex was "a candidate to be considered for euthanasia."[5] Dr. Mueller cared for Alex for approximately three months. Alex gained weight immediately and made a full recovery. When Alex left Dr. Mueller's care, she scored him a 4 or 4.5 on the Henneke scale.

Following a bench trial, the trial court found Markley guilty of first degree animal cruelty.

Markley appeals.

## ANALYSIS

Markley contends that insufficient evidence supports his conviction for first degree animal cruelty. We disagree.

We must determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the conclusions of law.[6] Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it

---

[3] Id. at 119.

[4] RP (Dec. 12, 2012) at 70.

[5] Id. at 31, 39.

[6] State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

allows any rational trier of fact to find all of the crime's elements beyond a reasonable doubt.[7] Unchallenged findings of fact are verities on appeal.[8]

To prove first degree animal cruelty, the State had the burden of proving beyond a reasonable doubt that (1) with criminal negligence, (2) Markley starved a horse, (3) causing "[s]ubstantial and unjustifiable physical pain that extend[ed] for a period sufficient to cause considerable suffering."[9]

Markley primarily contends that his conduct did not constitute criminal negligence because he had neither previous horse experience nor knowledge of an old, emaciated horse's dietary needs. "Criminal negligence" is defined as a person's "fail[ure] to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation."[10] Criminal negligence is based on an objective "reasonable person" standard.[11] The crime of first degree

[7] State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002).

[8] Stevenson, 128 Wn. App. at 193. Here, the only challenged finding of fact is that "[n]o information was provided indicating where or from who[m] Alex was purchased." Clerk's Papers at 79. There was no evidence who sold the horse to Markley, but Markley's wife testified that the horse was purchased "[s]omewhere out in Roy[, Washington]." RP (Dec. 12, 2012) at 154. Although the trial court's finding is inaccurate, it does not materially affect the court's conclusions of law and therefore is harmless. State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992) ("[A]n erroneous finding of fact not materially affecting the conclusions of law is not prejudicial and does not warrant a reversal.").

[9] RCW 16.52.205(2). Markley was not charged with either dehydrating or suffocating the horse, alternative ways of violating RCW 16.52.205(2).

[10] RCW 9A.08.010(1)(d).

[11] State v. Coates, 107 Wn.2d 882, 892, 735 P.2d 64 (1987).

animal cruelty "requires proof of criminal negligence, not an intentional act."[12]

Importantly, the reasonable person standard does not take account of a person's peculiar circumstances or characteristics; the inquiry is limited to what a reasonable person would do under similar circumstances.[13] "[I]f a reasonable person would have avoided the wrongful act, and the defendant's failure to do so is a gross deviation from this reasonable course of conduct, the defendant has acted with criminal negligence."[14]

Here, the "wrongful act" was the starvation that resulted in substantial and unjustifiable physical pain, causing Alex considerable suffering. Because criminal negligence involves an objective standard, Markley's argument that he lacked experience with and knowledge of an older, emaciated horse's dietary needs is not persuasive.[15] Instead, we focus on what a reasonable person would do under similar circumstances.

The evidence here was that Alex appeared old and skinny when Markley purchased him and that Alex remained in a severely emaciated condition while in Markley's care. The evidence also established that while Markley cared for Alex, the horse was underfed. Shortly after obtaining Alex, Markley switched from high-quality hay to less expensive local hay that lacked adequate nutritional value for an old horse. He used two dietary supplements in an attempt to increase the horse's weight, but the evidence was that neither improved Alex's body condition. A rational trier of fact could

---

[12] State v. Peterson, 174 Wn. App. 828, 848, 301 P.3d 1060, review denied, 178 Wn.2d 1021, 312 P.3d 650 (2013).

[13] Coates, 107 Wn.2d at 895.

[14] Id. at 892.

[15] Id. at 895 ("The [person's] state of mind is purely irrelevant to a charge of criminal negligence.").

find that given Alex's extremely emaciated condition and the lack of improvement in his condition, a reasonable person would have consulted someone with animal care expertise. It is undisputed that Markley did not seek veterinary assistance while he owned Alex. A rational trier of fact could find that Markley's actions and inactions constituted a gross deviation from a reasonable course of conduct. Accordingly, this evidence, viewed in the light most favorable to the State, is sufficient to allow a rational trier of fact to conclude that Markley acted with criminal negligence by starving Alex.

Markley also contends that there is insufficient evidence to establish that he starved Alex because the horse was starved before he acquired it. "Starves" is not defined under the first degree animal cruelty statute, so we focus on that term's ordinary meaning.[16] Common definitions include "to perish from lack of food," "to suffer extreme hunger," "to suffer or perish from deprivation," "to kill with hunger," and "to deprive of nourishment."[17]

Here, the testimony of several witnesses established that, more than three months after Markley acquired Alex, the horse was several hundred pounds underweight, starved, and at risk of death. Evidence also established that Markley failed to provide adequate nutrition during the months that he owned Alex. Given this evidence, a rational trier of fact could find that, while in Markley's care, Alex suffered extreme hunger and was deprived of nourishment amounting to starvation. Moreover, expert testimony established that Alex suffered unnecessary and substantial pain as a

---

[16] State v. Edwards, 84 Wn. App. 5, 10, 924 P.2d 397 (1996).

[17] WEBSTER'S THIRD NEW INT'L DICTIONARY 2228 (2002).

6

result of this starvation.[18]  Therefore, Markley's conviction for first degree animal cruelty is supported by sufficient evidence.

Markley's reliance on State v. Smith is unpersuasive.[19]  In Smith, the defendant's conviction for first degree animal cruelty following his llama's death was reversed after the appellate court determined that a lesser included offense instruction of second degree animal cruelty should have been given.[20]  Such an instruction was necessary because the "evidence support[ed] a rational inference that [the defendant] committed only second degree animal cruelty for his failure to seek appropriate medical attention."[21]  Here, by contrast, there is sufficient evidence to support a rational inference that Markley failed to obtain any advice while he starved Alex.  Unlike Smith, the evidence that Alex was starved does not support only the lesser included offense of merely failing to provide medical attention.

---

[18] The unchallenged findings of fact include that "Alex had been starved for a prolonged period of time," and "[s]tarvation causes significant physical pain in a horse." Clerk's Papers at 79.  Dr. Mueller also testified that Alex experienced considerable pain and suffering caused by starvation that lasted for a long period of time.  The physical pain that Alex experienced was substantial and unjustifiable because merely providing an adequate food supply would have stopped it.  See State v. Zawistowski, 119 Wn. App. 730, 737 n.3, 82 P.3d 698 (2004).

[19] 154 Wn. App. 272, 223 P.3d 1262 (2009).

[20] A person commits second degree animal cruelty "if, under circumstances not amounting to first degree animal cruelty, the owner knowingly, recklessly, or with criminal negligence: (a) Fails to provide the animal with necessary . . . medical attention and the animal suffers unnecessary or unjustifiable physical pain as a result of the failure." RCW 16.52.207(2).

[21] Smith, 154 Wn. App. at 278 (emphasis added).  The evidence included testimony that a previously undiscovered parasite might have been the cause of the llama's health problems. Id.

Markley also raises numerous issues in his statement of additional grounds, his addendum to his statement of additional grounds, and his response to the prosecution's oral argument. None support any relief on appeal.

Citing errors and omissions in the trial court transcripts, Markley argues that the quality of the trial court record was insufficient to permit effective appellate review. But he fails to identify how any of these alleged errors or omissions is relevant to any issue raised in his appeal. Thus, he has not shown that we have been prevented from effectively reviewing his case.[22]

Markley also contends that defense counsel rendered ineffective assistance by proceeding with a bench trial without consulting Markley and by failing to give Markley the option of bifurcating his bench trial from his wife's jury trial. To establish ineffective assistance, Markley must show that counsel's performance was deficient and that he was prejudiced as a result.[23] Markley has not met this burden as the colloquy with the trial court reflects that Markley understood his rights to a jury trial and the consequences of waiving those rights.[24] Markley's other contentions regarding his ineffective assistance claim are outside the record on appeal.

Markley's remaining arguments, such as his claims of malicious prosecution and judicial misconduct, are entirely unsupported by the record. Markley's assertions of

---

[22] State v. Putman, 65 Wn. App. 606, 611, 829 P.2d 787 (1992) (a record may be sufficient for review even if a verbatim report of proceeding is not available for each portion of the proceedings).

[23] Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[24] Additionally, waiving the right to a jury trial can be a tactical decision. State v. Likakur, 26 Wn. App. 297, 303, 613 P.2d 156 (1980). Counsel's advice in this area is deemed "within the area of judgment and trial strategy and as such rests exclusively in trial counsel." State v. Thomas, 71 Wn.2d 470, 471, 429 P.2d 231 (1967).

embezzlement, misuse of government funds, and his prosecutorial misconduct claims are based on alleged facts outside the record on appeal and, therefore, cannot be addressed on direct appeal.[25] We find no support in the record for Markley's other contentions in his response to the prosecution's oral argument.

Affirmed.

WE CONCUR:

_____

_____

_____

---

[25] See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).