## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON | No.  47258-9-II |
| Respondent, | |
| v. | |
| JOHN W. A. RUSSELL, | UNPUBLISHED OPINION |
| Appellant. | |

Sutton, J. — John W. A. Russell appeals his conviction for first degree assault with a deadly weapon[1] and his sentencing condition.  We hold that there was sufficient evidence to support Russell's conviction for first degree assault with a deadly weapon, the trial court did not abuse its discretion when it ordered that he be evaluated for civil commitment prior to his release, and the trial court erred when it imposed discretionary legal financial obligations (LFOs) without making an individualized inquiry as to his ability to pay.  As to Russell's statement of additional grounds (SAG) claim, we hold that the trial court did not violate his right to an impartial jury when it permitted a juror with prior knowledge of the case to remain on the jury.  Therefore, we affirm Russell's conviction and the sentencing condition requiring that he be evaluated for civil commitment prior to his release, but we strike the discretionary LFOs and remand for the trial court to modify his judgment and sentence accordingly.

---

[1] Russell does not appeal his conviction for assault in the second degree.

FACTS

I. BACKGROUND FACTS

On the evening of June 28, 2014, Don and Jeanette Johnson had several of their children and their friends from the neighborhood over for dinner at their home in Aberdeen. Ike Stone and Jack Russell were among the friends having dinner that evening. Jeanette[2] testified that Stone visited their home often and that Russell had been to the house before, but she did not know him well.

Several people were drinking throughout the night, including Jeanette, Stone, and Russell. Jeanette testified that Don went to bed around midnight and that she, Stone, and Russell were sitting at the dining room table talking and drinking. Around 2:30 a.m., all other guests had left, and Jeanette told Stone and Russell to "wrap it up" because it was getting late. 1 Verbatim Report of Proceedings (VRP) (Jan. 27, 2015) at 71. Both Jeanette and Stone testified that there were no arguments or disagreements that evening. Stone testified that just before 3:00 a.m., Russell "seemed . . . out of it," was resting his head on the counter, and that he was so intoxicated that he was unable to hold fluids in his mouth. 1 VRP (Jan. 27, 2015) at 117.

Jeanette testified that Russell stood up suddenly and she thought he was standing up to leave when she felt a "rush of warm going down [her neck]." 1 VRP (Jan. 27, 2015) at 72. Stone testified that Russell "suddenly jumped up, got behind Jeanette, and slashed her throat with a knife." 1 VRP (Jan. 27, 2015) at 98. Russell also cut Stone on his neck and chest before Stone was able to grab the knife and restrain Russell. Stone continued to restrain Russell until he got

---

[2] We refer to parties with the same last name by first names to avoid confusion; we intend no disrespect.

weaker, and Stone eventually laid him on the floor. Stone testified that Russell explained his actions and stated that Jeanette "hurt [him]" and he "wanted to show that people will do things for no reason." 1 VRP (Jan. 27, 2015) at 101-02.

Jeanette suffered extensive injuries. Her neck was slashed with a knife causing her to lose a great deal of blood. The wound required a lengthy surgery to repair and a multiple day hospital stay. The State charged Russell with one count of first degree assault as to Jeanette and one count of second degree assault as to Stone with a deadly weapon enhancement and a firearm enhancement added to each count.

## II. JURY VOIR DIRE

Following jury voir dire but before opening statements, juror 10 stated that she was the charge nurse on duty at the hospital when Jeanette was being treated. Both Russell and the State questioned juror 10 outside the presence of the other jurors. Juror 10 stated that she understood that Jeanette had been cut with a knife by a man, that she may have said "hello" to her, and that she received reports about her care. VRP (Feb. 5, 2015) at 6. However, juror 10 also stated that she did not "know any details of what . . . happened" and that her knowledge of the case would not influence her decision. VRP (February 5, 2015) at 8. Defense counsel did not exercise a preemptory challenge to dismiss juror 10 or challenge juror 10 for cause.

## III. GUILTY VERDICT

To find Russell guilty of first degree assault as to Jeanette, the jury is required to find beyond a reasonable doubt that he acted "with intent to inflict great bodily harm." RCW 9A.36.011(1). The jury found Russell guilty of one count of first degree assault and one count of

second degree assault, both with a deadly weapon enhancement, but did not find him guilty of the firearm enhancement on either count.

IV. SENTENCE

The trial court sentenced Russell to 147 months of confinement as to count one and 14 months of confinement as to count two. The trial court also imposed a term of community custody of 36 months as to count one and 18 months as to count two. The trial court ordered that Russell "shall be evaluated for civil commitment on mental health grounds prior to release" and stated,

> I want . . . [to] have him evaluated for civil commitment after he is released from prison, because I don't know what his mental state is going to be after he serves time in prison, but I know that he did something that is so horrible, without any explanation.
>
> . . .
>
> [B]ecause I can't understand what he did.

Clerk's Papers (CP) at 7; VRP (February 20, 2015) at 7-8, 10.

The trial court also imposed $575 in discretionary LFOs, $200 in court costs, $100 in DNA collection fees, $500 in victim assessment, and an undetermined amount in restitution. The trial court did not make a finding as to whether Russell had the ability to pay discretionary LFOs. The trial court found Russell indigent at trial and for appeal. Russell was 27 years old at the time and no information was presented as to his ability to work upon his release. Russell appeals.

ANALYSIS

I. SUFFICIENCY OF EVIDENCE

Russell argues that the State did not present sufficient evidence that he intended to inflict great bodily harm on Jeannette because he could not act with the required intent when he was so

intoxicated, and thus the State failed to prove that he committed assault in the first degree with a deadly weapon beyond a reasonable doubt. We disagree.

When reviewing a sufficiency of the evidence claim, we ask whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). When a defendant challenges the sufficiency of the evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We defer to the trier of fact as to resolving conflicting testimony, evaluating witness credibility, and evaluating the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

To support a conviction for assault in the first degree with a deadly weapon as charged, the State was required to prove the following elements beyond a reasonable doubt:

> That [Russell] in Grays Harbor County, Washington, on or about June 29, 2014, with intent to inflict great bodily harm, did assault [Jeanette] with a deadly weapon or by force or means likely to produce great bodily harm

RCW 9A.36.011(1)(a); CP at 34. First degree assault requires the specific intent to inflict great bodily harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Specific intent is defined as the "intent to produce a specific result, as opposed to intent to do the physical act that produces the result." *Elmi*, 166 Wn.2d at 215.

Although the voluntary intoxication of a defendant does not make an act by that individual "less criminal," his intoxication may be considered in determining whether they possessed the necessary mental state required to commit the crime. RCW 9A.16.090. The trier of fact may consider the defendant's intoxication, but the voluntary intoxication statute "does not require that

5

consideration to lead to any particular result." *State v. Coates*, 107 Wn.2d 882, 889-90, 735 P.2d 64 (1987)

By challenging the sufficiency of the evidence, Russell necessarily admits the truth of Stone's testimony and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106. Here, Stone testified that Russell "suddenly jumped up, got behind Jeanette, and slashed her throat with a knife." 1 VRP at 98. Stone also testified that Russell explained his actions and stated that Jeanette "hurt [him]" and he "wanted to show that people will do things for no reason." 1 VRP at 101-02. The jury was allowed to consider Russell's intoxication but was not required to find that his voluntary intoxication precluded him from forming the required specific intent to inflict great bodily harm as required for the crime of first degree assault. *Coates*, 107 Wn.2d 889-90. We defer to the trier of fact to determine the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106. We hold that in viewing the evidence in a light most favorable to the State, a rational trier of fact could find that Russell intended to inflict great bodily harm with a deadly weapon beyond a reasonable doubt. Thus, we affirm the first degree assault conviction with a deadly weapon.

## II. SENTENCING CONDITION

Russell argues that the trial court erred when it ordered that he be evaluated for civil commitment prior to his release because there was no evidence at trial that he had a mental health disorder or mental defect requiring an evaluation, and because he was not evaluated for competency.[3] We disagree.

---

[3] Although Russell argues that he was not evaluated for competency under RCW 71.05, he does not cite any authority that such an evaluation is required prior to sentencing.

Sentencing conditions are usually upheld if they are reasonably crime related. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). However, the court is required to enter findings of fact that the defendant's mental illness contributed to his crimes before it orders a defendant to participate in mental health treatment. *State v. Jones*, 118 Wn. App. 199, 209, 76 P.3d 258 (2003). We review a sentencing condition for an abuse of discretion. *Warren*, 165 Wn.2d at 32.[4]

Here, the trial court did not order Russell to participate in mental health treatment; it only ordered that he "shall be evaluated for civil commitment on mental health grounds prior to release." CP at 7. The trial court reasoned that it "[couldn't] understand what [Russell] did" when "he did something that is so horrible, without any explanation." VRP (Feb. 20, 2015) at 8, 10.

Thus, we hold that the trial court did not abuse its discretion because the condition that Russell be evaluated for civil commitment is reasonably crime related when the court had no other rational explanation for Russell's actions.

## III. DISCRETIONARY LFOS

Russell argues that the trial court erred when it imposed $575 in discretionary LFOs without inquiring as to his ability to pay. We agree.

"A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). Generally, we may refuse to review a claim of error raised for the first time on appeal. RAP 2.5(a). But, as our Supreme Court in *Blazina* noted, an appellate court may

---

[4] Russell does not argue that the trial court did not have the authority to impose a crime-related condition, including a mental evaluation, but simply argues that there was "no evidence presented at trial that Russell suffered a mental health disorder." Br. of Appellant at 11.

exercise its discretion to reach unpreserved claims of error. *Blazina*, 182 Wn.2d at 832-33. We choose to exercise our discretion to review this issue given the length of Russell's sentence and his indigency.

RCW 10.01.160(3) provides,

The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

The sentencing court must make an "individualized inquiry into the defendant's current and future ability to pay before the court imposes LFOs." *Blazina*, 182 Wn.2d at 839. The inquiry must "consider important factors, such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay." *Blazina*, 182 Wn.2d at 839.

Here, the record does not show that the trial court made any individualized inquiry into Russell's ability to pay prior to imposing discretionary LFOs. Given the length of his sentence, 15 years, and his indigency, it is unlikely that Russell has or will have the ability to pay the discretionary LFOs. Thus, the trial court erred when it imposed discretionary LFOs without making an individualized inquiry as to his ability to pay and we strike the imposition of discretionary LFOs. We remand to strike the discretionary LFOs and order the trial court to modify Russell's judgment and sentence accordingly.

## IV. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Russell claims that the court infringed upon his right to an impartial jury because it allowed a juror to continue serving when the juror admitted that she had prior knowledge of the case. We disagree.

We assume without deciding under RAP 2.5(a) that Russell raises a constitutional error that is reviewable for the first time on appeal. A defendant raising a constitutional error must show that the constitutional error is "manifest." *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 45 (2014). An error is manifest if the defendant can show that it "resulted in . . . practical and identifiable consequences in the trial." *Lamar*, 180 W.2d at 583.

Here, defense counsel did not exercise a preemptory challenge to dismiss juror 10 or challenge juror 10 for cause. Both Russell and the State had an opportunity to question juror 10 after she stated that she had prior knowledge of the case. Juror 10 stated that she understood that Jeanette had been cut with a knife by a man, that she may have said "hello" to her, and she received reports about her care. VRP (Feb. 5, 2015) at 6. However, juror 10 also stated that she "did not know any details of what . . . happened" and that her knowledge of the case would not influence her decision. VRP (Feb. 5, 2015) at 8. There is no evidence in the record that juror 10 could not be impartial. And Russell cannot show that the alleged constitutional error affected the outcome of the trial. Thus, we hold that Russell's right to an impartial jury was not violated when the trial court allowed juror 10 to serve on the jury.

CONCLUSION

We hold that there was sufficient evidence to support Russell's conviction for first degree assault with a deadly weapon, that the trial court did not abuse its discretion when it ordered that he be evaluated for civil commitment prior to his release, but that the trial court erred when it imposed discretionary LFOs without making an individualized inquiry as to his ability to pay. As to his SAG claim, we hold that the trial court did not violate his right to an impartial jury when it permitted a juror with prior knowledge of the case to remain on the jury.

No. 47258-9-II

We affirm Russell's conviction and the sentencing condition that he be evaluated for civil commitment prior to his release. But we strike the $575 in discretionary LFOs from his judgment and sentence, and remand for the trial court to modify his judgment and sentence accordingly.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, P.J.

LEE, J.